Theresa Hauth et al., appellees, v. John Sambo et al., appellants.

Filed July 1, 1916.  No. 18886.

1. **Intoxicating Liquors:** Action for Damages: Parties.  Persons engaged in selling intoxicating liquors under a license are jointly and severally liable for all damages arising from such traffic, to the causes of which they have contributed, and such liability extends to the sureties upon their bonds.  All such persons and

their sureties may be joined as defendants in a single action to recover damages.

2. ———: BONDS OF LICENSEES. The obligation assumed in a liquor license bond is not purely contractual, but must be interpreted in the light of the provisions of the law regulating the liquor traffic. It is not a bond primarily given to indemnify a private party, though by its terms private parties may avail themselves of its provisions. It is a public bond given to the state as a condition precedent to engaging in the liquor traffic.

3. ———: ———. While, under the law of suretyship, a bond is, as a general rule, recognized to be purely a contract which, when privately given without any qualifying laws, is to be strictly construed and not extended beyond the scope of the obligation according to its express terms, still a statutory bond to the public, given for the observance of a law authorizing a business only permitted under specified conditions and regulated under the police power of the state, is not in the same sense strictly contractual in its nature. *Andresen v. Jetter*, 76 Neb. 520, and *Sullivan v. Radzuweit*, 82 Neb. 657, distinguished and limited.

4. Witnesses: IMPEACHMENT. Where a party takes the deposition of a witness, and such witness appears at the trial, and, when called to the witness-stand, surprises the party calling him, by testifying at variance with his testimony as given in his deposition, the party calling him may, after interrogating him as to the statements previously made, use the deposition, previously taken, for the purpose of showing such inconsistent statements.

5. Intoxicating Liquors: ACTION ON BOND: LIABILITY. In an action upon a liquor license bond by a widow and minor children, for damages alleged to have been caused by the death of their husband and father, who, while in a state of intoxication, caused by liquors furnished him by the principal in such bond, was upon a railroad track, or in such close proximity thereto as to be struck by a locomotive and killed, the question of negligence on the part of the railroad company, or contributory negligence on the part of the decedent, is immaterial.

6. Torts: JOINT TORT-FEASORS: SETTLEMENT: RELEASE. "Settlement with one of several joint wrongdoers and payment of damages is not a defense to an action against another, unless it was agreed between the parties to the settlement that such payment was in full of all damages suffered. If the settlement is in writing, oral evidence is competent to show the intention of the parties thereto in an action against one not a party to the settlement." *Fitzgerald v. Union Stock Yards Co.*, 89 Neb. 393.

100 Neb.—11

7. **Intoxicating Liquors:** CIVIL ACTION: VERDICT: JUDGMENT. The rule announced in *Bergmann v. Koehn,* 99 Neb. 525, that, in an action against a saloon-keeper and his sureties for damages, in which the jury has returned a verdict against both defendants for a sum in excess of the penalty stipulated in the bond, the trial court has power to render judgment against the principal defendant for the full amount of the verdict, and may also render judgment against the surety for the sum stipulated in the bond, is reaffirmed and declared to be the settled law in this state upon that point.

8. **Appeal:** HARMLESS ERROR. Other assignments of error, set out in the opinion, *held* insufficient to warrant interference with the judgment.

APPEAL from the district court for Sarpy county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*A. S. Ritchey, W. R. Patrick* and *I. J. Dunn,* for appellants.

*W. W. Slabaugh, John W. Battin* and *A. E. Langdon,* contra.

FAWCETT, J.

Action by the widow and minor children of Joseph Hauth, deceased, to recover damages for his death, which it is alleged was contributed to by intoxicating liquors furnished him by defendant Sambo during the night immediately preceding his death. Sambo was a retail liquor dealer in the city of Omaha, and defendant Illinois Surety Company was surety on his bond. The action was instituted and service obtained upon the surety company in Sarpy county, and summons sent to and served upon Sambo, the principal, in Douglas county. The jury returned a verdict against both defendants for $11,400. Judgment was entered against the principal for the full amount of the verdict, and against the surety for $5,000, being the amount of the penalty fixed in the bond. Defendants appeal.

A number of errors are assigned, which will be considered in the order in which they are argued in the brief.

Is the verdict sustained by the evidence? The evidence as to whether or not Hauth had been drinking in Sambo's saloon during the night preceding his death, when considered in connection with the circumstances shown, cannot be called conflicting. The period of time covered by the evidence is from about 8 o'clock in the evening of September 21, 1912, until early in the morning of the next day. Plaintiff testified that Hauth was in Sambo's saloon about 8 o'clock in the evening; that others were in there drinking, and Hauth was there with them. She does not testify positively that she saw her husband drink, but she saw beer on the bar at the time, and a fair inference from her testimony is that she saw the others drinking. Her testimony further shows that about 10 o'clock her husband returned to the house, which was within sight of the saloon, got his gun, and returned to the saloon, with the declared intention of going hunting early in the morning; that when he left home at that hour he was not drunk; that he looked all right to her. The evidence clearly establishes the fact that from the time Hauth returned to the saloon at 10 o'clock until 2 or 3 o'clock in the morning, when he, in company with John Drabeck, Sambo's bartender, and one Dan Kennedy, started on their hunting trip, Sambo's saloon was the scene of a drunken carousal, and that during all of that time Hauth was a member of the party; that some time during the night he and one Veit became involved in a controversy which they adjusted by a fight outside of the saloon. The story told by some of defendants' witnesses on the stand, that Hauth was sober when he and his two companions started on the hunting trip at 2 o'clock in the morning, is too incredible, in the face of the facts shown, for any jury to believe. As we view the evidence, and as the jury unquestionably viewed it, it clearly establishes the fact that Hauth was intoxicated when he was struck and killed by the locomotive; that this intoxication was produced by liquors obtained in Sambo's saloon, and was the cause of his losing his life.

The second point argued is that the court erred in over-
ruling the demurrer of each of the defendants on the
ground of misjoinder of causes of action. The contention
is that there was one cause of action stated against the
defendants jointly on the bond, and an additional one
against the defendant Sambo upon his liability as a re-
tail liquor dealer, fixed by statute, regardless of and in
addition to his contract obligation set forth in the bond.
Section 3849, Rev. St. 1913, is as follows: "No person
shall be licensed to sell malt, spirituous, and vinous
liquors,   *   *   *   unless he shall first give bond in the
penal sum of five thousand dollars, payable to the state of
Nebraska,   *   *   *   conditioned that he will not violate
any of the provisions of this chapter, and that he will pay
all damages, fines and penalties and forfeitures which may
be adjudged against him under the provisions of this
chapter.   *   *   *   Any bond taken pursuant to this section
may be sued upon for the use of any person, or his legal rep-
resentatives, who may be injured by reason of the selling
or giving away any intoxicating liquor by the person so
licensed or by his agent or servant."

This section of the statute is clear and unambiguous.
It makes the furnishing of the bond a condition precedent
to the obtaining of a license to sell intoxicating liquors.
It is, in every sense of the word, an integral part of the
application for a license. The surety, who signs such a
bond, knows at the time of doing so that the filing of the
bond is one of the necessary conditions which must be
complied with before the license is issued. The surety is,
therefore, in every true sense of the word, a party to the
application. He is charged with knowledge of the fact
that the signing of this bond renders him subject to be
sued upon it for the use of any person, or his legal rep-
resentative, who may be injured by reason of the selling
or giving away of any intoxicating liquors by the person
so licensed, or by his agent or servant. He knows that
the bond is conditioned that his principal will not violate
any of the provisions of the chapter of the statute relating

to the issuance of such licenses, and that the principal will pay all damages, fines, penalties and forfeitures which may be adjudged against him under the provisions of this chapter. He therefore agrees that, to the amount stated in the bond, he will stand liable to pay all such damages, fines, penalties and forfeitures which may be adjudged against his principal, and this, too, without any condition or reservation that his principal must be first proceeded against. He, in fact, to the amount stated in the bond, makes himself a joint and several principal as to all persons who may be injured by reason of the selling or giving away of any intoxicating liquors by his principal himself, or by such principal's agent or servant. It will be seen from this that a surety on a liquor bond occupies a different relation to such a bond than that occupied by a surety upon ordinary bonds, and the rules applicable to an ordinary bond cannot be applied to a liquor bond with the same strictness with which they are applied to ordinary bonds.

We concede that under the rules governing recovery in actions on ordinary bonds a judgment in excess of the penalty of the bond would be erroneous. In *Andresen v. Jetter,* 76 Neb. 520, and *Sullivan v. Radzuweit,* 82 Neb. 657, the implication is that an action upon a saloon-keeper's bond is governed by the same principles as one upon an ordinary bond. In those cases, however, it will be seen that the distinction under consideration here was not presented or discussed. Where the distinction has been considered, we think the courts are generally holding that the rule in an action on ordinary bonds does not apply in actions upon liquor bonds. In the opinion by Maxwell, J., in *Jones v. Bates,* 26 Neb. 693, it is said: "The bond is merely a mode of securing satisfaction for the injury. In other words, the bond is given as a means of indemnifying persons who may be injured by the saloon-keeper furnishing intoxicating liquors to another." In *Wardell v. McConnell,* 23 Neb. 152, we held that principals and their sureties upon license bonds are liable to an action for damages jointly with the principals and sureties upon

other bonds of a like character, and that sureties upon the bond of a licensed vendor of intoxicating liquors are liable, not only for the damages resulting directly from the acts of their principals, but for all damages to which such acts contribute. On page 159 it is said: "We recognize this as a radical departure from the general law governing principals and sureties, but that it is in accordance with the provisions of the chapter referred to, we entertain no doubt." In *Horst v. Lewis,* 71 Neb. 365, we held that persons engaged in selling intoxicating liquors under a license in this state are jointly and severally liable for all damages arising from such traffic, to the causes of which they have contributed, and that such liability extends to the sureties upon their bonds; that all such persons and their sureties may be joined as defendants in a single action to recover damages. In the opinion, by Mr. Commissioner Ames (p. 367), it is said: "Defendants in such cases are treated both by the statute and by the foregoing decisions as joint wrongdoers, but the statute also creates a right of contribution among them, an element unknown to the common law relative to joint tortfeasors." (p. 368) "But Smith's sureties are obligated for his entire obedience to the law, and are liable, not only for his several or separate breaches of it, but for such breaches thereof, or liabilities thereunder, as he may have committed or incurred jointly with other licensees under the liquor act. They, therefore, to the same degree as their principal, had an interest in the action adverse to the plaintiffs, were proper parties to the action, and were properly served in any county in the state to which a summons was issued." In *Kramer v. Bankers Surety Co.,* 90 Neb. 301, we held: "The sureties on a bond given under the provisions of section 6, ch. 50, Comp. St. 1909, are not merely nominal parties in an action on the bond, but have such an interest in the action that an action on the bond may be brought against them in any county where they reside or may be found and, under section 65 of the Code, a summons properly issued to any other county for service on their principal." In Black,

Intoxicating Liquors, sec. 281, it is said: "The action given under the civil damage laws is entirely statutory, and hence must be governed wholly by the provisions of the statute." In *Squires v. Miller,* 173 Mich. 304, it is held: "The obligation is not purely contractual, but must be interpreted in the light of the provisions of law regulating the liquor trade." In the opinion, on page 311, it is said: "This is not a bond primarily given to indemnify a private party, though by its terms private parties may avail themselves of its provisions. It is a public bond given to the commonwealth as a condition precedent to engaging in the liquor traffic, a business which, as a matter of public policy, is regulated and restricted under the police power of the state." Again, on page 312, it is said: "While, under the law of suretyship, a bond is, as a general rule, recognized to be purely a contract which, in its nature, when privately given without any qualifying laws, is to be strictly construed and not extended beyond the scope of the obligation according to its express terms, still a statutory bond to the public, given for the observance of a law authorizing a business only permitted under specified conditions and regulated under the police power of the state, is not in the same sense strictly contractual in its nature. Its characteristics are also, and perhaps to a greater degree, statutory. It is to be read and construed and enforced in connection with and according to the statute pursuant to which it is given, and should be interpreted according to the purpose, intent, and meaning of the legislative enactment."

In order that there may be no doubt in the future as to the rule in actions on liquor bonds, the rule announced in the *Jetter* and *Radzuweit* cases will be considered as limited to actions on ordinary bonds.

In *Bergmann v. Koehn,* 99 Neb. 525, we held: "In an action against the saloon-keeper and his surety for damages, in which the jury has returned a verdict against both defendants for $9,000, the trial court has the power to render a judgment against the principal defendant for

the full amount of the verdict, and may also render judgment against the surety for the sum of $5,000, which is the amount for which the surety company is liable on its bond." A motion for rehearing was filed in that case, which we have held until the question there decided could be re-examined in the case at bar, which had been argued and submitted at the time such motion for rehearing had been filed. Under the authorities above cited, and after a careful re-examination of the question, we now reaffirm the above holding in *Bergmann v. Koehn* and announce it as the settled law upon that point in this court.

The third assignment is that the court erred in giving instruction No. 8, which defines the term "intoxication." While the definition of the term is not quite as explicit as it might be, it could not have prejudiced the jury, for the reason that the evidence of intoxication was so strong that the jury could not have been misled by the definition given.

The fourth assignment assails instruction No. 5, given by the court, which told the jury that the liability of a surety upon the bond of a liquor dealer is coextensive with that of the principal, and that their verdict with respect to the surety company should be the same as their verdict as to the principal. The surety company cannot complain of this instruction, for the reason that, to the extent of the penalty named in the bond, its liability was coextensive with that of the principal, and the court in entering judgment limited its liability to that sum. Defendant Sambo cannot complain, as his liability was not limited by the bond.

The fifth assignment challenges instruction No. 10, given by the court, in which the jury were told that it was not material whether the employees of the railroad company were negligent or not, or whether or not the railroad company was liable for damages, if any, sustained by plaintiff; that the question for the jury to determine was whether the deceased was intoxicated at the time of his death, and whether the defendant Sambo furnished the

intoxicating liquor, or some part thereof, and whether in consequence of such intoxication Hauth lost his life. It is claimed that this instruction was not applicable to the case, and that the case of *Cornelius v. Hultman,* 44 Neb. 441, from which the instruction was taken, was an entirely different case from the one at bar. It is said this instruction was an invitation to entirely disregard the defense set up in the answers of the defendants that plaintiff had made claim against the railroad company and had received full settlement and satisfaction for all loss and damage sustained by her by the death of Joseph Hauth. We think the instruction was proper. As stated by counsel for plaintiff in their brief, the question is whether the liquor furnished Hauth contributed to his injury and death; that it is immaterial whether he was guilty of contributory negligence in relation to the railroad, or whether the railroad was negligent. We think that, if Hauth's getting upon the railroad track, or in such close proximity to it as to receive the injury which caused his death, was the result of intoxication from liquors obtained in Sambo's saloon, the question of negligence or contributory negligence is, as the court stated, immaterial.

In the sixth assignment instruction No. 17 is complained of. It told the jury that if they found for the plaintiff they would determine the amount of the damages to which plaintiff was entitled under the evidence, and deduct from said amount the sum which the evidence shows had been paid plaintiff by the Chicago, Burlington & Quincy Railroad Company, to wit, the sum of $1,100, and render a verdict for the remainder. The complaint to this instruction is that but one injury resulted in this case, viz., the death of Hauth; that plaintiff was entitled to only one satisfaction for the loss sustained by his death, and that she obtained that satisfaction from the railroad company. There can be no controversy over the rule of law invoked, but we think it is not applicable here. The contract of settlement between plaintiff and the railroad company is before us. It shows upon its face that it is a compromise

settlement made by plaintiff in the face of a probably well-grounded denial by the railroad company of all liability. On this kind of a settlement plaintiff accepted from the railroad company $1,100. The agreement nowhere recites that plaintiff released other joint tort-feasors, or that the amount for which she compromised her claim with the Burlington road was the full amount of her damages. This point is ruled adversely to defendants' contention in *Fitzgerald v. Union Stock Yards Co.*, 89 Neb. 393.

The seventh assignment is that the court erred in refusing to direct a verdict for defendants. In the light of what has been said, nothing need be added here.

The eighth and ninth assignments relate to the witnesses Fox and Veit, who on the trial testified directly at variance with the testimony which they had given a short time prior thereto in depositions. They were interrogated as to their contradictory statements in the depositions, and either denied making them or said they "did not remember." Counsel for plaintiff were then permitted to show this difference in their testimony by calling the stenographer who took the depositions. These two assignments involved the question of the right of the court to permit a party, who has been taken by surprise on the trial by having a witness whom he has introduced testify contrary to statements made by such witness to counsel prior to the trial, to impeach his own witness. It is contended that this cannot be done. Many authorities, in addition to those cited, could be found showing that to be the general rule; but, like all general rules, it has its exceptions. The exception to the rule is well sustained in *Selover v. Bryant*, 54 Minn. 434, and in the note to the case in 21 L. R. A. 418, and in *Doran v. Waterloo, C. F. & N. R. Co.*, 170 Ia. 614.

The tenth assignment assails the refusal of the court to give instruction No. 9, requested by defendants, by which the court was requested to tell the jury that, if they found from all the circumstances and evidence in the case that the accident which caused the death of Hauth would have happened whether he was intoxicated or sober, and that

the liquor furnished by defendant Sambo, if any was furnished, did not contribute to the accident, then their verdict should be for the defendants. The first point in this instruction called for speculation on the part of the jury, and the second point is properly covered by the instructions given by the court.

The eleventh assignment complains of the refusal of the court to give instruction No. 6, requested by defendants, as follows: "You are instructed that the plaintiffs are not entitled to recover damages for the loss of the society and companionship of the husband and father, nor for injuries to the feelings and sentiments caused by the intoxication and drunkenness of the husband and father, nor can damages be allowed by way of compensation for grief, wounded feelings and disappointed hopes." By instruction No. 16, given by the court on its own motion, the jury were correctly told just what things they might consider in determining the amount of the damages to be awarded in case they found for plaintiff, and concluded with this statement: "But in no event can the amount of damages exceed the value to plaintiffs of the support of deceased, which was lost to them through his death." No claim is made in the petition for damages on any of the grounds stated in the requested instruction. The instruction was properly refused.

The final assignment assails instructions 4, 10 and 14, given by the court, on the ground that they are contradictory, misleading and inconsistent. We are unable to agree with counsel upon this point.

Finding no prejudicial error in the record, the judgment of the district court is

AFFIRMED.

HAMER, J., not sitting.