P. CHARLES TANKERSLEY, APPELLEE, v. LINCOLN TRACTION COMPANY, APPELLANT.

FILED JULY 14, 1917.    No. 19432.

1. **Accord and Satisfaction: JOINT TORT-FEASORS: SETTLEMENT: SUPPLEMENTAL PETITION.** In a suit against two joint tort-feasors for

Tankersley v. Lincoln Traction Co.

personal injuries, one of them may settle with the plaintiff, and, in case the settlement is not in full satisfaction for the injury, the suit may proceed against the other; but the plaintiff should not be permitted to plead the settlement and the amount paid by a supplemental petition. Such supplemental petition should be stricken from the files on defendant's motion.

2. **Appeal: PREJUDICIAL ERROR: STATEMENTS OF COUNSEL.** It is prejudicial error to allow counsel for the plaintiff to state to the jury the fact of such settlement, its terms, and the amount paid by the settling defendant, as such statement tends to show an admission of negligence as against the nonsettling defendant.

3. **Evidence: ADMISSIBILITY: PHOTOGRAPHS.** Photographs of the place and surroundings where the accident occurred, which are taken some two years afterwards, and long after such place and surroundings have been materially changed, are not ordinarily admissible in evidence.

4. **Trial: INSTRUCTIONS: PHOTOGRAPHS.** But if it becomes necessary to use such photographs in evidence, it is the duty of the court to give the jury such instructions regarding them as will insure the defendant a fair trial.

5. **Negligence: EVIDENCE: REPAIRS.** "Evidence of subsequent repairs made or precautions taken after an accident or the infliction of an injury is not admissible to prove antecedent negligence." *Pribbeno v. Chicago, B. & Q. R. Co.*, 81 Neb. 657.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed.*

*Field, Ricketts & Ricketts* and *G. L. De Lacy,* for appellant.

*Berge & McCarty, contra.*

HAMER, J.

This is an appeal from a judgment in favor of one P. Charles Tankersley for personal injuries alleged to have been sustained by him for negligence on the part of the Lincoln Traction Company. The facts briefly stated are as follows: The Lincoln, Capital Beach & Milford Railway Company, a corporation entirely distinct from the Lincoln Traction Company, was incorporated prior to September, 1906, for the purpose of constructing and operating an electric railway west from the city of Lincoln to Capital Beach and other points further west. On

the 15th day of September, 1906, The Lincoln, Capital Beach & Milford Railway Company, entered into a contract with the Burlington Railroad Company, pursuant to which the Burlington installed and thereafter maintained a signal system at the intersection of the highway known as P street with the Burlington right of way. The expense of the installation and maintenance was and is paid by the Capital Beach Company. This signal system consisted of semaphores about 2,000 feet from the crossing in either direction and near the Burlington track. These semaphores were operated by two wires attached to the base of a vertical post by means of an arm or gate about 16 feet long attached to the same post. This gate was about six feet above the level of the ground and stood in a horizontal position. When the gate was turned across the Burlington track, the wires were made taut so as to raise the semaphores to a horizontal position and thereby warn an approaching train that the crossing was occupied. There are two of these wires. The vertical post is on the Burlington right of way about six feet east of the east rail of the track and about the same distance from the north line of the highway. At the foot of the vertical post was a box about three feet square. At the time of the injury the wires emerged from this box, and for a space of about three feet before they entered a duct, which carried them under the public crossing, were exposed. It was at the point of this exposure that the plaintiff was injured. When the gate was in its normal position it stood at right angles across the Beach Company's track. It was only changed from this position when a car on the Beach Company's track was crossing the tracks of the Burlington. About the center of the arm or gate was a box in which a red light was maintained at night as a warning of danger. Immediately adjacent to this gate the Burlington maintained a public crossing over its tracks, planked, level with the top of its rails, with good approaches, for a width of 29 feet. Several feet above the horizontal gate or arm was

a short arm some 4 or 5 feet in length which pointed in the same direction as the gate or arm, and had painted upon it in large letters the word "Stop." Within a few feet of the vertical post to which the arm or gate was attached, and by means of which the wires were made to operate the semaphores, was another post. On this post five electric lights were installed and maintained in a vertical row. These lights were kept lighted in the nighttime.

On the 14th day of May, 1907, the Lincoln Traction Company, entered into an operating contract with the Beach Company. By the terms of this contract the Traction Company agreed to furnish and operate cars, as agent of the Beach Company, over its tracks constructed to Capital Beach west of the city. The Traction Company was to receive 2½ cents per kilowatt hour for current, and actual expense for labor and material necessary in the operation of the cars. It was to collect all fares, deduct therefrom the cost of current and operating expense, and render a monthly statement to the Beach Company. It was not to be liable for injuries or damages in operating cars over the Beach Company's line. Profits were first to be applied to damages recovered, if any, and extraordinary repairs. Employees were to be discharged on written request of the Beach Company. The net balance arising from fares after deducting the above was equally divided between the Traction Company and the Beach Company. The contract contained other details not material to the instant case. At the time of the alleged injury the Traction Company was operating cars under this contract on the Beach line. It sustained no other relation to that company, the Burlington Company, or the signal system than that which can be inferred from its compliance with this operating contract. It had no authority, nor was any delegated to it, to modify or meddle with the signal system, or the wires which caused plaintiff's injury. The signal system, including the wires, was installed and maintained by the

Burlington on its right of way. The Beach Company paid the expense of the installation and the maintenance. After the Traction Company entered into the operating contract with the Beach Company the bills for maintenance were sent to the Beach Company, but actually paid by the Traction Company out of the Beach Company's earnings under the operating contract, and charged to the Beach Company in the monthly statements rendered that company.

At the time of the plaintiff's injury, and for more than a month prior thereto, cars on the Beach Company's track were operated only as far west as the Burlington track, which was then its western terminal. There was on the rail of the Beach Company's track, 50 feet east of the Burlington's east rail, a derailing frog, so that the Traction Company's car could not approach closer than a point 50 feet east of the east rail of the Burlington track without being derailed. By reason of this fact the rear platform of an approaching car would stop about 75 feet east of the offending wires. The plaintiff, when he arrived, safely alighted, and says he walked rapidly straight west, passed under the warning gate, and was tripped by the wires which operate the semaphores. It is claimed that a path had been created, which the plaintiff was following. The alleged path, however, was not well defined, and was rough and obstructed, and no effort had been made to make a safe walk at the point in question. The path, if any, was created subsequent to the time the wires and the signal system had been installed by the Burlington at the point in question, and persons who created it, such as it was, had to walk or step over these wires. It appears that plaintiff was tripped by and fell over these wires and was injured. Immediately adjacent to the wires and gate was a good crossing maintained by the Burlington, pursuant to statute, for the accommodation of the public. After the injury the Burlington boxed the wires at the point where they were exposed, and this fact was used by plaintiff in

the trial of the case as an admission that it was negligence to leave the wires exposed.

After the jury had been placed in the box and the *voir dire* examination made, the plaintiff settled with the Burlington for $3,200. Before any evidence was offered the plaintiff filed a supplemental petition setting up this settlement and the amount agreed to be paid by the Burlington on account of its negligence. The Traction Company moved to strike this supplemental petition from the files, for the reason that the matter therein set forth did not come within the province of a supplemental petition. The motion was overruled. It was thus disclosed that the Burlington settled and confessed judgment in behalf of the plaintiff for the sum of $3,200.

The same question was canvassed by the court in instruction No. 18, and the jury were there told the amount that the Burlington had paid in satisfaction of its admitted liability to the plaintiff. This instruction was excepted to. The jury returned a verdict in favor of the plaintiff and against the Traction Company for $6,400, and then recited that they deducted $3,200, the amount for which the Burlington had confessed judgment, leaving the verdict against the Traction Company $3,200. A motion for a new trial was filed and overruled, and judgment entered against the Traction Company. This appeal is prosecuted for the purpose of reversing that judgment.

The appellant's first two assignments of error are: The court erred in refusing to strike the plaintiff's supplemental petition from the files; and the court erred in permitting it to be disclosed to the jury that plaintiff had settled with the Burlington Railroad Company, and the amount of the settlement. These assignments of error will be considered together.

1. It is well settled by a decision of this court that, when two joint tort-feasors are sued, the plaintiff may settle with one of them and the action may proceed against the other. *Fitzgerald v. Union Stock Yards Co.,*

89 Neb. 393; *Bloss v. Plymale,* 3 W. Va. 393, 100 Am.
Dec. 752. Where such a course is pursued, it is the duty
of the court to establish a rule of procedure that will in-
sure a fair and impartial trial to the nonsettling party.
To permit the plaintiff in such a case to plead the settle-
ment, the terms thereof, and the amount paid by the set-
tling party would have the effect of a confession by the
joint tort-feasor of the negligence complained of by the
·plaintiff, and the jury would at once assume that the
nonsettling defendant was liable for the same amount of
damages. It would seem from our examination of the
record that such was the effect produced on the jury in
this case.

· There is another reason why the supplemental petition
should have been stricken from the files. Section 7717,
Rev. St. 1913, provides, in substance, that negotiations
looking to a settlement between litigants cannot be dis-
closed to the jury on the trial of the merits. This ex-
pression of the legislature would seem to apply with full
force in this case. The consideration of such a settle-
ment and its effects is for the court, and not for the
jury.

2. Appellant contends that it was error to offer evi-
dence that the Burlington Company boxed their wires
immediately after the accident occurred and to permit
plaintiff's counsel to make the statement which follows
in the opening address to the jury: "I will say to you,
also, the evidence will show since that time those wires
have been boxed up and the ground filled up, so the dan-
ger has been removed after Mr. Tankersley was injured."
We think this contention is well founded. *Pribbeno v.
Chicago, B. & Q. R. Co.,* 81 Neb. 657.

In that case it is said in the syllabus: "Evidence of
subsequent repairs made or precautions· taken after an
accident or the infliction of an injury is not admissible
to prove antecedent negligence." In the body of the
opinion it is said: "Over defendants' objection, plaintiff
was permitted to prove that subsequent to the flood de-

fendants 'lengthened the bridge and took out the ground so the water could go through.' Defendants not only objected to the testimony, but moved to strike it out of the record, so the court was well advised that defendants insisted the evidence was incompetent." Judge Root, who prepared the opinion of this court, said: "The testimony would naturally impel the jurors to believe the railway company had ascertained its fault and was endeavoring to repair its dereliction; hence without question it had admitted its negligence." He further said: "We believe logic, reason and sound public policy direct that we follow the rule adopted by the majority of the state courts." He cites many authorities, from some of which we may briefly quote. We will only refer to a part of the authorities which he cites. 1 Elliott, Evidence, sec. 228; *Standard Oil Co. v. Tierney,* 92 Ky. 367, 36 Am. St. Rep. 595; *Nalley v. Hartford Carpet Co.,* 51 Conn. 524; *Sappenfield v. Main Street & A. P. Co.,* 91 Cal. 48; *Corcoran v. Village of Peekskill,* 108 N. Y. 151; *Hodges v. Percival,* 132 Ill. 53; *Shinners v. Proprietors of Locks & Canals,* 154 Mass. 168; *Anson v. Evans,* 19 Colo. 274; *Sievers v. Peters Box & Lumber Co.,* 151 Ind. 642; *Sylvester v. Town of Casey,* 110 Ia. 256; *Terre Haute & I. R. Co. v. Clem,* 123 Ind. 15; *Getty v. Town of Hamlin,* 127 N. Y. 636; *Morse v. Minneapolis & St. L. R. Co.,* 30 Minn. 465; *Missouri P. R. Co. v. Hennessey,* 75 Tex. 155; *Georgia S. R. Co. v. Cartledge,* 116 Ga. 164; *Columbia & P. S. R. Co. v. Hawthorne,* 144 U. S. 202.

In *Standard Oil Co. v. Tierney, supra,* it was held that evidence that the defendant had taken certain precautions calculated to prevent a repetition of the injuries was not admissible.

In *Nalley v. Hartford Carpet Co., supra,* it was held that evidence of safeguards placed after the accident was not admissible for the purpose of showing prior negligence.

In *Sappenfield v. Main Street & A. P. Co., supra,* it was held that evidence of the substitution of a safer appliance after the accident was not competent.

In *Corcoran v. Village of Peekskill, supra,* it was held that the reception of evidence on the part of the plaintiff that after the.accident the owner of the premises built a fence around the area to prevent persons from falling into it was incompetent.

In *Hodges v. Percival, supra,* it was held: "New measures or devices adopted after the accident do not necessarily imply that all previous ones were insufficient."

In *Shinners v. Proprietors of Locks & Canals, supra,* it was held: "If an accident happens through the alleged negligence of an employer, his subsequent acts in taking additional precautions to prevent other accidents are not admissible in evidence, in an action against him for the injuries occasioned."

In *Anson v. Evans, supra,* it was held that the subsequent conduct of the defendant could not be shown for the purpose of establishing antecedent negligence.

In *Sievers v. Peters Box & Lumber Co., supra,* it was held that evidence of repairs made after the injury had been sustained was not admissible to show antecedent negligence.

In *Sylvester v. Town of Casey, supra,* it was held that evidence of subsequent repairs of the sidewalk was inadmissible to show the negligence of the city.

3. It is contended that the court erred in admitting the photographs, exhibits 1 to 6, in evidence over the objections of the defendant. It clearly appears, and is in fact conceded, that these photographs were taken more than a year after the accident occurred, and after the changes in the *locus in quo* were made. Whatever may be the rule in other states, this court has decided in *Pribbeno v. Chicago, B. & Q. R. Co.,* 81 Neb. 657, that such photographs are not ordinarily admissible. The majority of the courts of other states so hold. In a note to *Alcott v. Public Service Corporation,* 32 L. R. A. n. s. 1084, 1127 (78 N. J. Law, 482), the authorities are collated which clearly show that the photographs were inadmissible to show changes or repairs made after the ac-

cident. It appears, however, that the purpose of introducing the photographs was not to show that changes or repairs had been made, but for the purpose of showing the platform, the pathway, the location of the crossing arm, etc. If proper instructions had been given confining the consideration of the pictures to such purposes, probably no error would have occurred, but no such instructions were given in the case.

The record clearly shows that defendant did not have a fair trial, and for this reason the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.

MORRISSEY, C. J., and SEDGWICK, J., not sitting.