HEIDEMANN, Appellant v. ROHL, Respondent

(194 N.W.2d 164)

(File No. 10951. Opinion filed January 28, 1972)

**Bangs, McCullen, Butler, Foye & Simmons, Ronald Clabaugh,** Rapid City, for plaintiff and appellant.

**Braithwaite, Cadwell & Braithwaite, Gale B. Braithwaite,** Sioux Falls, for defendant and respondent.

HANSON, Presiding Judge.

This is an action for the wrongful death of Linda Heidemann who lost her life when the light airplane in which she was riding crashed near Anselmo, Nebraska on January 11, 1969. She was a member of the Augustana College debate team returning to Sioux Falls from a debate tournament in Colorado Springs, Colorado. The accident resulted in the deaths of all four students, Don Tibbets, the debate coach, and Frayne Anderson, the pilot, who was also a librarian at Augustana College.

The defendant, Jerry Rohl, owned and operated the Business Flying Service at the Sioux Falls Airport which consisted of aircraft rental, instruction, and charter. He owned a Piper Cherokee VI which was a six-passenger single engine aircraft. On January 9, 1969 Anderson rented the Cherokee from defendant either for himself or on behalf of Augustana College and departed on a flight from Sioux Falls, South Dakota to Colorado Springs, Colorado. His passengers were four members of the Augustana debate team and its coach. The purpose of the trip was to attend an official college debate tournament after which the debate team would be flown back to Sioux Falls by Anderson in the leased plane.

Anderson had a private pilot's license authorizing him to fly under Visual Flight Rules (VFR) established by the Federal Aviation Administration (FAA). VFR conditions exist when a pilot can fly by visual reference to something outside the plane such as the horizon and landmarks. Anderson was not instrument rated, which means he was not authorized to fly when Instrument Flight Rules (IFR) apply. IFR conditions exist when a pilot has no visual references outside the aircraft and must navigate solely by instruments.

Anderson departed from Colorado Springs, Colorado on January 11, 1969 with the Augustana debate team and coach on board as passengers. He filed a VFR flight plan from Colorado Springs to Sioux Falls, South Dakota. During the flight Anderson contacted the North Platte, Nebraska FAA Flight Service Station and identified his position as two miles south of the station at an altitude of 7500 feet on top of an overcast of clouds. He was advis-

ed by the Flight Service Station the weather was below minimum VFR conditions from North Platte to O'Neill, Nebraska and it was impossible to get below the overcast. Anderson replied to the Flight Service Officer in a rather jovial manner, "I guess I will get some instrument practice." No further contact was had with the aircraft. The wreckage of the plane was not discovered until March 25, 1969 near Anselmo, Nebraska. The accident report of the National Safety Board listed the probable cause of the accident as continued VFR flight into adverse weather conditions and spatial disorientation.

The plaintiff, as Special Administrator of the Estate of Linda Heidemann, seeks damages in the amount of $75,000 against defendant in a complaint containing two separate causes of action. Count I alleges, in substance, defendant Rohl authorized Frayne Anderson to operate the leased aircraft in which plaintiff's decedent was a passenger and Anderson negligently operated the airplane in airspace over the state of Nebraska, which negligence proximately resulted in the death of decedent. Count II alleges defendant negligently leased an aircraft knowing it was defective and not reasonably fit for such flight, which negligence proximately resulted in the airplane crash in Nebraska on January 11, 1969.

Prior to selecting a jury defendant's motion to dismiss Count I of the complaint was granted. The trial then proceeded on the cause of action alleged in Count II which resulted in a verdict and judgment for defendant.

Count I of the complaint was dismissed by the trial court upon the grounds that the law of Nebraska where the accident occurred did not apply and according to the law of South Dakota the negligence of a pilot is not imputed to the owner of an airplane.

With respect to imputed negligence of a pilot South Dakota adopted the Uniform State Law for Aeronautics in 1925. Although adopted in over twenty states this act was withdrawn as an approved uniform law in 1943. See 1970 Handbook of the National Conference of Commissioners on Uniform State Laws, Table VII, p. 372. However, it continues to be the law of South Dakota and provides in part:

"50-13-6. The owner and the pilot, or either of them, of every aircraft which is operated over lands or waters of this state shall be liable for injuries or damage to persons or property on the land or water beneath, caused by the ascent, descent, or flight of the aircraft, or the dropping or falling of any object therefrom in accordance with the rules of law applicable to torts in this state."

"50-13-7. The liability of the owner of one aircraft to the owner of another aircraft, or to aeronauts or passengers on either aircraft, for damage caused by collision on land or in the air, shall be determined by the rules of law applicable to torts on land."

Accordingly, in the absence of a master-servant relationship the negligence of a pilot is not imputed to the owner of an aircraft in South Dakota except for injuries occurring to persons or property on the ground. See Haskin v. Northeast Airways, Inc., 266 Minn. 210, 123 N.W.2d 81, for the same interpretation of a similar law in Minnesota.

The law of Nebraska governing this subject is expressed in Section 3-101, Nebraska Revised Statutes of 1943, as follows:

"(11) Operation of aircraft or operate aircraft means the use of aircraft for the purpose of air navigation, and includes the navigation or piloting of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of the statutes of this state."

The Nebraska statute is substantially the same as the federal law found in 49 U.S.C.A. § 1301(26). The federal act has been interpreted as a "definition" which does not create a new cause of action, and does not pre-empt state law with respect to liability for torts arising out of the operation of airplanes. McCord v. Dixie Aviation Corp., 10 Cir., 450 F.2d 1129; Yelinek v. Worley, D.C. 1968, 284 F.Supp. 679; Rosdail v. Western Aviation, Inc., D.C.,

297 F.Supp. 681; Rogers v. Ray Gardner Flying Service, Inc., 5 Cir., 435 F.2d 1389. Iowa, Mississippi and New Hampshire have statutes similar to the Nebraska law which have uniformly been held to make the owner responsible for the negligent conduct of one to whom he entrusts his airplane. Hoebee v. Howe, 98 N.H. 168, 97 A.2d 223; Lamasters v. Snodgrass, 248 Iowa 1377, 85 N.W.2d 622; Hays v. Morgan, 5 Cir., 221 F.2d 481 (involving Mississippi law); and see 8 Am.Jur.2d, Aviation, § 72, p. 694. Although the Supreme Court of Nebraska has not been called upon to interpret or apply Section 3-101(11) of their law, we may assume for the purpose of this action it would follow the decisions of Iowa, New Hampshire and Mississippi.

 The dismissal of Count I primarily presents a conflict of law question as to whether or not the substantive law of South Dakota or Nebraska governs the rights and liabilities of the respective parties. In seeking a reversal plaintiff contends the substantive law of Nebraska applies to all issues in this action because (1) it is statutorily required by SDCL 21-5-4; and (2) the law of the place of accident applies under the lex loci delicti rule.

SDCL 21-5-4 is entitled "Foreign Statute of Limitations Applicable" and provides as follows:

> "Whenever the death of a citizen of this state has been caused by a wrongful act, neglect, or default in another state, territory, or foreign country for which a right to maintain an action and recover damages in respect thereto is given by a statute of such other state, territory, or foreign country, such right of action may be enforced in this state within the time prescribed for the commencement of such action, by the statute of such other state, territory, or foreign country."

This statute authorizes the enforcement of another state's wrongful death act in South Dakota. It also "borrows" the statute of limitations of the foreign act. When the wrongful death act of another state is relied on for recovery in this state the provisions of the foreign act relating to the measure and amount of damages

and the time within which action can be commenced would normally apply. Otherwise, our "borrowing" statute does not contemplate or require the application of the foreign state's substantive law to other issues in the case.

Although this court has never directly expressed itself on the subject, it has generally been assumed our state would follow the prevailing rule that the place of the wrong, or the lex loci delicti, governs the substantive rights of parties to a multistate tort action as expressed in the 1934 edition of Restatement of the Law, Conflict of Laws, § 378. See McMahon v. DeKraay, 70 S.D. 180, 16 N.W.2d 308.

Although the lex loci delicti or "place of the wrong" rule has the virtue of certainty, ease of application, and predictability, it has lost favor in recent years with many legal scholars, commentators, and courts because of its unrealistic, unbending, and mechanical application. The modern approach is toward a more flexible and analytical consideration of relevant factors to determine what law should govern the substantive rights and liabilities of parties in a multistate tort action. The cases and authorities on the subject are too numerous to cite. In this respect see Anno., on Modern Status Of Rule That Substantive Rights Of Parties To A Tort Action Are Governed By The Law Of The Place Of The Wrong in 29 A.L.R.3d 603. 16 Am.Jur.2d, Conflict of Laws, § 71, p. 109, and 15A C.J.S. Conflict of Laws § 8(4).

Leading the judicial trend away from the traditional rule is the New York case of Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1, in which both parties were residents of New York. Plaintiff was a guest in defendant's automobile on a week-end trip to Canada. While driving in Ontario defendant apparently lost control of his car and Miss Babcock was injured. Ontario had a guest statute which would bar her recovery. New York did not. The action was brought in New York. A motion to dismiss based on the lex loci doctrine was sustained by the lower court and reversed on appeal. In discarding the traditional lex loci delicti rule the court stated:

"The 'center of gravity' or 'grouping of contacts' doctrine adopted by this court in conflicts cases involving contracts impresses us as likewise affording the appropriate approach for accommodating the competing interests in tort cases with multi-State contacts. * * *

"Comparison of the relative 'contacts' and 'interests' of New York and Ontario in this litigation, vis-a-vis the issue here presented, makes it clear that the concern of New York is unquestionably the greater and more direct and that the interest of Ontario is at best minimal. The present action involves injuries sustained by a New York guest as the result of the negligence of a New York host in the operation of an automobile, garaged, licensed and undoubtedly insured in New York, in the course of a week-end journey which began and was to end there. In sharp contrast, Ontario's sole relationship with the occurrence is the purely adventitious circumstance that the accident occurred there. * * *

" * * * Where the defendant's exercise of due care in the operation of his automobile is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place.

"The issue here, however, is not whether the defendant offended against a rule of the road prescribed by Ontario for motorists generally or whether he violated some standard of conduct imposed by that jurisdiction, but rather whether the plaintiff, because she was a guest in the defendant's automobile, is barred from recovering damages for a wrong concededly committed. As to that issue, it is New York, the place where the parties resided, where their guest-host relationship arose and where the

trip began and was to end, rather than Ontario, the place of the fortuitous occurrence of the accident, which has the dominant contacts and the superior claim for application of its law. Although the rightness or wrongness of defendant's conduct may depend upon the law of the particular jurisdiction through which the automobile passes, the rights and liabilities of the parties which stem from their guest-host relationship should remain constant and not vary and shift as the automobile proceeds from place to place. Indeed, such a result, we note, accords with 'the interests of the host in procuring liability insurance adequate under the applicable law, and the interests of his insurer in reasonable calculability of the premium.' "

The "most significant relationship" theory developed in Babcock v. Jackson has been incorporated into Section 145, Restatement of the Law, Second, Conflict of Laws, as follows:

"The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Although there is dissatisfaction with the lex loci delicti rule there is also a reluctance on the part of many courts to adopt the modern fragmented approach to the settlement of multistate conflict of laws problems because of the lack of discernible and suitable guidelines. For the most part the variants of the modern approach set forth theory and concepts rather than followable rules. As a result there is considerable confusion and inconsistency in its application. This is acknowledged by the New York court which has had the experience of applying the modern rule since its Babcock v. Jackson decision in 1963 when it said in Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394, "unfortunately, as we [have] recently had occasion to observe, our decisions subsequent to rejection of the **lex loci delictus** rule 'have lacked precise consistency * * *.' "

In the application of the modern rule too often the law of a case is not known until after an appeal is taken and all the relevant factors reviewed in a multi-page opinion by the appellate court. This condition is perhaps characteristic of any transitional period in a changing law area and eventually a satisfactory substitute for the lex loci delicti rule will be developed. Until then we prefer to retain the traditional "place of wrong" rule with its built-in virtues of certainty, simplicity, and ease of application. An impressive number of other courts have recently assessed the merits of the "modern rule" and have refused to adopt any variant of it. See McGinty v. Ballentine Produce, Inc. (1966), 241 Ark. 533, 408 S.W.2d 891; Landers v. Landers (1966), 153 Conn. 303, 216 A.2d 183; Friday v. Smoot (1965, Del.Supr.), 211 A.2d 594; Folk v. York-Shipley, Inc. (1968, Del.Supr.), 239 A.2d 236; McDaniel v. Sinn (1965), 194 Kan. 625, 400 P.2d 1018; Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216; White v. King (1966), 244 Md. 348, 223 A.2d 763; Cook v. Pryor (1968), 251 Md. 41, 246 A.2d 271; Shaw v. Lee (1963), 258 N.C. 609, 129 S.E.2d 288; Petrea v. Ryder Tank Lines, Inc. (1965), 264 N.C. 230, 141 S.E.2d 278; Cobb v. Clark (1965), 265 N.C. 194,

143 S.E.2d 103; Oshiek v. Oshiek (1964), 244 S.C. 249, 136 S.E.2d 303; Marmon v. Mustang Aviation, Inc. (1968), Tex., 430 S.W.2d 182.

It follows that the substantive law of Nebraska applies to the issues involved and Count I of plaintiff's complaint should not have been dismissed.

On March 12, 1970 plaintiff, in consideration of the sum of $15,000 executed a "release" in favor of Augustana College and The American Lutheran Church for all claims and demands arising out of the January 11, 1969 accident resulting in the death of Linda Heidemann. The release contains the following reservation:

"It is understood and agreed that this Release shall reduce, to the extent of the pro rata share of Augustana College and The American Lutheran Church, any damages recoverable by me against any other person, firm or corporation by reason of said accident on January 11, 1969; and to this end, in further consideration of the aforesaid payment to me I hereby release and forever quit claim and discharge all other persons, firms and corporations whatsoever and each of them, their and each of their respective heirs, executors, administrators, successors and assigns, of and from all actions, causes of action, claims and demands for, upon or by reason of the pro rata share caused by or attributable to the said Augustana College and/or The American Lutheran Church, of any loss, damage, injury or expense suffered by me in connection with said accident on January 11, 1969, this all pursuant to the provisions of SDCL 15-8-18."

As the liability of Augustana College for the alleged negligence of its pilot is based solely upon the doctrine of respondeat superior, defendant contends the release of the college operates to release Anderson from liability. Therefore, it should also bar recovery against defendant Rohl as he is liable, if at all, for the imputed negligence of the pilot Anderson.

■ Although the Release was executed in South Dakota, the law of Nebraska must be applied as the effect of a release is governed by the substantive law of the place where the alleged tort occurred.

Unlike South Dakota, Nebraska has not adopted the Uniform Contribution Among Tortfeasors law. However, the Nebraska Supreme Court has rejected the common law rule that the release of one joint tortfeasor releases all other joint tortfeasors in Fitzgerald v. Union Stockyards Co., 89 Neb. 393, 131 N.W. 612. The court held the intention of the parties governed whether or not the release of one wrongdoer was intended to be in full settlement and satisfaction of the wrong. If the amount received was not in full satisfaction, it operates as a pro tanto bar to an action against the other wrongdoer. The court stated:

"There is reason in holding that, if one of the joint wrongdoers acted for all and assumed to settle the whole matter and make full settlement of all claims of the injured party, such settlement might be binding upon all parties. We do not see upon principle why a part satisfaction and release of one wrongdoer should operate in favor of the other wrongdoer. It is generally held that there is no right of contribution existing between wrongdoers, and the collection of part satisfaction from one is not an injury, but rather a benefit to the others. It is not the policy of the law to encourage litigation, but rather to favor settlement. Several wrongdoers who are jointly and severally liable for the injury done may not agree as to their liability, nor as to the desirability of adjusting the matter. Some of them might be willing to compromise with the injured party by paying a just proportion of the whole damage done, and be unwilling or even unable to pay the whole damage. Some men are quite eager for litigation; others will do anything reasonable to avoid it. If some of the wrongdoers are willing to adjust the matter by paying their reasonable proportion of the damage done, and the injured party can accept such payment and

still reserve his claim against the more stubborn ones, such a construction of the law would seem to facilitate settlement and tend to avoid litigation."

This rule has been followed and reaffirmed by the Nebraska court in Hauth v. Sambo, 100 Neb. 160, 158 N.W. 1036; Tankersley v. Lincoln Traction Co., 101 Neb. 578, 163 N.W. 850; Menking v. Larson, 112 Neb. 479, 199 N.W. 823, and Tober v. Hampton, 178 Neb. 858, 136 N.W.2d 194. We see no reason why the Nebraska court would not apply the same enlightened rule to a master-servant relationship as the Ohio court did in Losito v. Kruse, 136 Ohio St. 183, 24 N.E.2d 705. In other words the intention of the parties determines whether or not the release was given in full satisfaction of the claim.

■ Obviously, the release in the present action was only intended to release Augustana College and The American Lutheran Church from liability and it was not given in full satisfaction of plaintiff's claim. But, as the Nebraska court pointed out in Fitzgerald v. Union Stockyards, a party is "not entitled to more than one satisfaction for an injury done him". Therefore, the amount paid plaintiff for the release by Augustana College and The American Lutheran Church operates pro tanto to diminish the amount of damages recoverable against the defendant Rohl.

■ With reference to the cause of action alleged in Count II there was evidence in the record to the effect the altimeter on the airplane leased by defendant was sticky and had an 800 foot per minute static leak. Defendant testified he had ordered a new altimeter, but it had not been installed and the old altimeter had never been repaired. In this regard Paragraph 91.33 of the General Operating and Flight Rules of the Federal Aviation Administration was received in evidence which provided, in substance, that no person may operate a powered aircraft under Visual Flight Rules unless the aircraft contains certain specified instruments and equipment, including an altimeter, in operable condition. The trial court did not, as requested by plaintiff, specifically instruct the jury that a violation of such safety regulations constituted negligence as a matter of law.

As plaintiff contends this jurisdiction is committed to the view that "Where the statute, or the regulation having the force of statute, fixes the standard of care and the court determines that it was intended to protect the class of persons in which plaintiffs are included against risk of the type of harm which has in fact occurred, the court must direct the jury that an unexcused or unjustified violation of such statute or regulation is negligence as a matter of law. A failure to so instruct is reversible error." Weeks v. Prostrollo Sons, Inc., 84 S.D. 243, 169 N.W.2d 725. Also see Zakrzewski v. Hyronimus, 81 S.D. 428, 136 N.W.2d 572; Blakey v. Boos, 83 S.D. 1, 153 N.W.2d 305; and Bothern v. Peterson, 83 S.D. 84, 155 N.W.2d 308.

The trial court did fully instruct the jury on the general issue of negligence. It also quoted the pertinent portions of the FAA. Regulations relating to required equipment on aircraft used under Visual Flight Rules and instructed the jury such regulations set "the standard of care as to the condition of an aircraft." Under the circumstances, we believe the failure to give the requested instruction constituted harmless error. The instructions, as a whole, substantially conformed to our standards. The jury was fully informed as to the law of the case and could not have been misled as to the standard of care imposed upon defendant and the consequences of a violation of the stated FAA Regulations.

Accordingly the judgment appealed from is reversed with reference to the cause of action alleged in Count I and affirmed with reference to the cause of action alleged in Count II of plaintiff's complaint. No costs will be taxed either party.

BIEGELMEIER, WINANS and DOYLE, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Judge (dissenting).

In my opinion the trial court was correct in applying the substantive law of South Dakota to the issues presented by Count I of the complaint. I believe that the trial court erred, however,

in refusing to instruct the jury specifically that a violation of the FAA regulation constituted negligence as a matter of law, assuming, of course, that this court is still committed to the rule announced in Weeks v. Prostrollo Sons, Inc., 84 S.D. 243, 169 N.W. 2d 725.

I concur in that portion of the court's opinion which deals with the effect of the release given to Augustana College and The American Lutheran Church.