## LOW v. DAVIDSON MFG. CO.

### No. 7135.

Circuit Court of Appeals, Seventh Circuit.

June 6, 1940.

Rehearing Denied July 19, 1940.

Joshua R. H. Potts, Eugene Vincent Clarke, and Basel II. Brune, all of Chicago, Ill., for appellant.

Edward H. Stearns and Robert Vernon Jones, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a decree entered July 13, 1939, dismissing plaintiff's complaint for want of equity. The action of the court was had at the conclusion of plaintiff's testimony.

The suit was predicated upon a contract dated February 2, 1923 between the defendant and the plaintiff, and other parties described as investors. A copy of this contract was attached to and made a part of the complaint. The plaintiff sought an accounting, together with discovery, examination and inspection of defendant's records. Defendant, by its answer, denied liability and alleged that the contract of 1923 was amended and modified by a contract between the same parties entered into August 18, 1931, a copy of which latter contract was attached to and made a part of defendant's answer.

The principal question for decision involves a construction of the 1923 contract and, to some extent, the 1931 contract. The subject matter of the former contract was Automatic Press Feeders. It appears that at the time of the execution of the first contract, the defendant was in need of financial means to manufacture the feeder described in the contract. The situation resulted in the execution of the contract by which plaintiff and other parties to the contract advanced the sum of $50,000, of which $5,000 was advanced by plaintiff.[1]

Insofar as the 1923 contract is concerned, the question in dispute is whether it includes suction feeders, or applies solely to friction feeders. It is plaintiff's theory that it includes both types of feeders, while defendant contends it applies only to friction feeders. After the 1923 contract, defendant commenced and has continued the manufacture of friction feeders. About 1928 or 1929, defendant also commenced the manufacture of a machine known as a suction feeder. It is admitted that plaintiff has had an accounting and has been

---

[1] The amounts advanced by other parties were as follows: McKay $20,000; Waldo $5,000; Quinn $15,000 and Davidson, $5,000.

paid by the defendant for all moneys due him on account of the manufacture and sale by the defendant of the friction feeder. No accounting has been made, however, and it is denied by the defendant that there is any liability on account of defendant's manufacture and sale of the suction feeder for the reason that it is not included in the contract.

Due to the length of the contract we shall not set it forth in full, but will refer to such portions as seem material in determining the crucial question as to whether it includes both types of feeders. It commences by reciting that the company (defendant) is the owner of certain inventions relating to automatic paper feeders which it has been manufacturing and selling; that it requires additional capital in the conduct of such business and, that the investors (plaintiff and others) have examined such invention and devices and are willing to invest their money by the purchase of an interest in the proceeds thereof. In Paragraph 1-a, the investors agree to advance to the company the sum of $50,000. Paragraph 1-b purports to set forth the investors' interest, the pertinent language being:

"That said consideration is and shall be considered as payment for the purchase by Investors of an interest hereinafter specified in the proceeds to be realized in the future from the sale of *such feeders* as may be hereafter designed and manufactured for application to printing presses, duplicating machines, folding machines, paper box machines, glueing machines, and all other machines. * * *"

Plaintiff contends that the words "such feeders" appearing in this and other portions of the contract refer to all automatic feeders, which, if correct, admittedly includes the suction type feeder. Paragraph 2-b designates the Chicago Title and Trust Company as depository, with whom defendant is to deposit the amounts accruing to the investors under the terms of the contract. So far as material, it provides: "To turn over and pay to the Chicago Title and Trust Company hereinafter designated Depository from time to time when and as hereinafter specified for the benefit of the Investors, beginning with the date of the sale of the *first feeder* of the new model known as Model No. 3, designed and now in the process of manufacture under the improved inventions, for application to all types of

machines (excepting to typewriters, as aforesaid) a portion of the net selling price to the Company as follows: * * *"

The paragraph continues, fixing the amount which investors are to receive from "each feeder so manufactured," and the "manufacture and sale by the company of said feeders."

In subsequent paragraphs, the words "such feeders" and "said feeders" are frequently found. In a subsequent paragraph is provided the manner of terminating the contract. It is stated: "That the company may, at any time after eight years from the date of sale of the first of said new feeders, known as Model #3, terminate this agreement * * *"

As stated, it is plaintiff's contention that the feeders referred to have reference to all automatic paper feeders as mentioned in the recitals to the contract. It is argued that the reference in Paragraph 2-b to "the new Model known as Model #3, designed and now in the process of manufacture", merely has reference to the time when the payments were to begin. This appears to us as a rather weak explanation of the reason for specifically mentioning this particular model of machine. If plaintiff's contention be sound that the contract refers to all types of automatic feeders, there would have been no occasion to mention this particular type merely for the purpose of showing when payment was to commence. This purpose would have been served just as well by providing that payment should begin with the manufacture of the first feeder without any reference to Model #3. The mentioning of this model is inconsistent with plaintiff's theory that the contract included all types of feeders. It is also of some pertinency to point out that at the time the contract was made, the plaintiff and other investors examined the only type of machine which defendant then had and that it was a friction type such as Model #3. It would appear, therefore, that that was the type of machine which the parties had in mind and which they intended to cover by their contract. The more we study the contract in connection with the relevant circumstances, the more convinced we become in this respect.

It is argued by plaintiff that this construction would amount to a fraud on him because the defendant might have at once ceased the manufacture of the friction type machine and thereby defeat

plaintiff's rights under the contract. We do not believe there is any merit in this contention. In ascertaining what the parties had in mind, it is more reasonable to consider what did happen rather than what might have happened. The fact is, the defendant did not commence the manufacture of the suction type machine until seven or eight years after the contract had been made, and not until after plaintiff and the other investors had been more than reimbursed for the amounts of their investments.

This construction of the contract finds support in the subsequent acts of the parties. The 1931 contract between the same parties recites: "Whereas, heretofore, under date of the 2nd day of February, 1923, the Company entered into a certain agreement with the Investors relating to the manufacture and sale by the Company of certain friction feeders, and agreed to pay to the Investors a portion as therein expressed of the proceeds received by the Company from such manufacture and sale of such machines, in consideration of Fifty Thousand ($50,000.00) Dollars cash or its equivalent then and there paid by the Investors to the Company, which said agreement is still in effect; * * *"

It is argued by plaintiff that this recital cannot be given the effect of modifying or altering the previous contract. It is pointed out that this latter contract contains a clause that the former contract shall remain in full force and effect except as expressly modified. Assuming that plaintiff's argument is sound legally, we do not believe it is applicable because the second contract, as we understand it, does not seek to modify or change in any way the character of machine which is covered by the first contract. The parties, including plaintiff, by this recital, acknowledged that the machine covered by the first contract was the friction feeder. While we do not regard it as of great importance, we think it is material that the "other investors" who had a nine-tenths interest in the investment, in contrast to plaintiff's one-tenth interest, filed a pleading under the designation of involuntary plaintiffs in which they alleged: " * * * It was represented at that time to the Investors that the moneys to be advanced pursuant to the terms of said contract dated February 2, 1923, would be used for the purpose of developing and placing on the market said friction feeder known as Model No. 3 and that recompense for the Investors advancement of funds would be by the payment of specified royalties out of proceeds from the sale of said Model No. 3 friction feeders. * * *"

■ They also alleged that defendant had properly accounted for all moneys due them by reason of the 1923 contract. True, plaintiff would not be bound by the interpretation which his associate investors now place on the 1923 contract, yet we think it is fair to assume that the same circumstances which apprised his associates of what was intended by the contract, would likewise have apprised him. We agree with the conclusion of the District Court that there was no liability by reason of the 1923 contract.

■ Defendant argues that there is no liability under the 1931 contract for two reasons: (1) the complaint asserted no liability under the 1931 contract, and (2) that even if it had, no liability was shown. It is true the complaint is predicated entirely upon the 1923 contract—nowhere is the contract of 1931 mentioned. The defendant in its answer, however, alleged that the former contract was modified by the latter, and attached a copy of the latter to its answer. It appears from an order entered as a result of a pre-trial conference, that the 1931 contract was made an issue, as it likewise appears from the findings of fact made by the court. No objection was made to evidence concerning the latter contract. We think, under such circumstances, that Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is applicable and, that the 1931 contract was an issue the same as if it had been pleaded.

As already stated, the 1931 contract referred to the 1923 contract as relating to the manufacture and sale by the company of certain friction feeders. It also recited that by the former contract the investors were not to participate in any royalty received by the company from any license which the company might give to others to manufacture friction feeders and, that it was the desire of the company that provision be made for the investors in that respect. It was further recited that the American Multigraph Company, which had been purchasing such feeders from the defendant, was desirous of manufacturing smaller feeders on its own account, and desired from the defendant a license for that purpose. The contract

then provided that in case a license was issued to the Multigraph Company to manufacture such smaller friction feeders that a certain portion of the royalty received by the defendant should be paid to the plaintiff and other investors. Other terms and conditions were imposed which do not appear material at the present.

In conformity with this contract, a license contract was entered into between the defendant and the Addressograph-Multigraph Corporation, the nominee of the Multigraph Company, by which the latter was authorized to manufacture friction feeder machines in accordance with certain specified terms. Defendant, under this license agreement, received advanced royalties in the amount of $25,000. Plaintiff contends that two types of feeders were manufactured by the licensee, known as the Drility or Multigraph Feeder, and the Addressograph Feeder, and that plaintiff is entitled to an accounting as to any royalties received by the defendant, or royalties due the defendant from the licensee, by reason of the 1931 contract. As we understand, defendant does not dispute plaintiff's assertion that both of these feeders are friction feeders, and the court so found. The court further found: "That pursuant to Court's Exhibit 1, (the license agreement) the said Addressograph-Multigraph Corporation made and sold a number of friction feeders for addressograph or multigraph machines and the defendant made payments on said machines to all the other parties to the contracts, Exhibits 1 and 5, (the contract of 1931) on said feeders, excepting to plaintiff Low, to-wit co-plaintiffs Waldo, McKay and Quinn, but the evidence does not show to which machines the payments were applied."

The associate investors of plaintiff, by their pleading, alleged that they were entitled to royalties under the 1931 contract and the license agreement in connection therewith. Defendant's president admitted that payments had been made to plaintiff's associate investors covering these two types of feeders manufactured and sold by the licensee, although he was unable to state the amount of such payments. We are unable to perceive why plaintiff is not entitled to an accounting for royalties received by or due to the defendant by reason of this license agreement. It appears that a different conclusion would be inconsistent with what we have said concerning plaintiff's rights under the 1923 contract. There, we agreed with defendant's contention that plaintiff was not entitled to an accounting for the reason that the contract covered only the friction type of machine. The 1931 contract covered the same type of machine—in fact, it is used to show that the parties themselves interpreted the former contract to include only the friction type of machine. By the latter contract, payments were promised the plaintiff from royalties received from a licensee who was authorized to manufacture and sell the friction type of machine. Plaintiff has been paid for such machines under the contract of 1923, but not under the contract of 1931. The District Court concluded that neither the Multigraph nor Addressograph machines was covered by the contract of 1931 or the license agreement and that, therefore, the defendant was under no duty to account. We reach the opposite conclusion and hold that plaintiff was entitled to an accounting in this respect, with the right to examine defendant's records in support thereof.

The decree of dismissal, therefore, is reversed and the cause remanded with directions to proceed in accordance with the views herein expressed.

Reversed.