No. 15,120.

WILSON ET AL. *v.* ANDERSON ET AL.
(157 P. [2d] 690)

Decided March 26, 1945.

Mr. W. A. ALEXANDER, Mr. DONALD B. ROBERTSON, for plaintiffs in error.

Messrs. WOLVINGTON & WORMWOOD, for defendants in error.

*In Department.*

MR. CHIEF JUSTICE BAKKE delivered the opinion of the court.

THIS is an action for damages in the sum of $2,950.00 brought by William M. Anderson and his wife, Helen

Anderson, defendants in error, for the alleged loss sustained by reason of damage and injury to their household furnishings which were being transported from Oklahoma City, Oklahoma, to Denver, Colorado. The action is based upon the alleged negligence of R. B. Wilson and George Collins, plaintiffs in error, hereinafter referred to as defendants, in the driving of a truck which collided with the van in which the furniture was being transported, on a highway near Garden City, Kansas. At the close of the evidence a motion by defendants for a directed verdict was denied. The jury returned a verdict in favor of the Andersons and judgment was entered thereon in the sum of $1,600.00 and costs. Reversal is sought on a writ of error.

The furniture was being transported by King's Van & Storage Company, hereinafter referred to as the storage company, which was named as a party defendant in the court below; however, there was no service of process as to it, and the judgment is against the other defendants only. In their answer to the complaint, defendants set up the following: 1. A general denial. 2. Contributory negligence of King's Van & Storage Company's driver acting as agent for the plaintiffs. 3. Sole negligence of King's Van & Storage Company. 4. Unavoidable accident. All of these defenses were denied by plaintiffs in their replication, and the issues were submitted to the jury under instructions, which are not challenged in this review.

Preliminary to the movement of the furniture, the load was insured on a basis of declared value of thirty cents a pound under a cargo insurance contract, with a one hundred dollar deductible provision, "whereby the storage company pays the first $100 on any claim that is against them." After the accident, the cargo insurance carrier, the Minneapolis Fire & Marine Insurance Company advanced to the Andersons the sum of $629.35 under a "Loan Receipt," the pertinent part of which is in words and figures as follows, to wit:

"Loan Receipt

"Dated Sept. 3, 1941.

"Received from the Minneapolis Fire and Marine Insurance Co. (Hereinafter referred to as 'company') the sum of Six Hundred Twenty-nine & 35/100 Dollars ($629.35) as a loan, without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage to the property described below, or from any insurance effected on such property, and as security for such repayment the undersigned hereby pledges to the said 'company' all his, its or their claim or claims against said person, persons, corporation or corporations or other parties, or from any insurance carrier or carriers, and any recovery thereon, and hereby delivers to said 'company' all documents necessary to show his, its or their interest in said property.

"The undersigned hereby agrees to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its or their own name.

"In further consideration of said advance the undersigned hereby guarantee(s) that he, it or they are the owner(s) of said property and entitled to recover upon said claim for loss or damage thereto, and hereby appoint(s) the managers and/or agents of the said 'company' and their successors severally, his, its or their agent(s) or attorney(s)-in-fact, with irrevocable power, to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his, its or their name, but at the expense of the said 'company,' any and all legal proceedings that the said 'company' may deem necessary to enforce such claim or claims, and to execute in the name of the undersigned, any documents

that may be necessary to carry the same into effect for the purposes of this agreement.

"Any legal proceedings are to be under the exclusive direction and control of said 'company.' The property hereinabove set forth is as follows: * * *."

A similar receipt was given to King's Van & Storage Company under the $100 deductible provision.

These loan receipts were admitted in evidence without objection, and were fully explained by counsel in his interrogation of Mrs. Anderson as to the terms and conditions therein contained as regarding the plaintiffs, so that the jury had full opportunity to take them into consideration in arriving at its verdict.

The loan agreements were not given until September 3, 1941, long after the complaint was filed on February 21, 1941. The trial commenced on September 27, 1941.

As grounds for reversal, defendants specify two points:

"1. The lower court erred in overruling plaintiff in error's (defendants) motion for a directed verdict for the reason that the undisputed evidence disclosed that the King's Van & Storage Company and the plaintiffs in error were joint tort-feasors and that the defendants in error (plaintiffs) and King's Van & Storage Company had negotiated a complete settlement whereby the defendants in error had released all of their rights against King's Van & Storage Company and against the plaintiffs in error.

"2. The lower court erred in overruling plaintiffs in error's motion for a directed verdict for the reason that the undisputed evidence disclosed that King's Van & Storage Company and the plaintiffs in error were joint tort-feasors and that the defendants in error had received payment from King's Van & Storage Company in the sum of $729.35 and that such payment should diminish the claim of the defendants in error against the plaintiffs in error in the amount so paid."

■ 1. Under the pleadings in this case, the question of whether the storage company was a joint tort-feasor was clearly a question for the jury, and counsels' statement that the evidence is undisputed that the storage company was a joint tort-feasor is not supported by the record. There was competent and ample evidence before the jury clearly establishing the negligence of defendants, and if the jury believed this testimony, the storage company was not a joint tort-feasor.

■ But even assuming that the storage company was a joint tort-feasor, the signing of the loan receipt by the plaintiffs was not a release such as to preclude suit against the other tort-feasor. As counsel for plaintiffs in error concede, the practice of insurance companies in giving these, or similar loan receipts is now widespread. Strikingly similar receipts have been given approval by the Supreme Court of the United States. *Luckenbach v. McCahan Sugar Refining Co.*, 248 U.S. 139, 39 Sup. Ct. 53, 63 L. Ed. 170. As opposing that case, counsel rely upon *Simpson v. Hartranft*, 283 N.Y.S. 754, 157 Misc. 387. However, the latter case was based upon a provision in the New York insurance law prohibiting insurance companies in that state from making such loans. The Luckenbach case has been followed in many cases, including the following: *Automobile Ins. Co. v. Springfield Dyeing Co.*, 109 F. (2d) 533; *First National Bank of Ottawa v. Lloyds of London*, 116 F. (2d) 221; *The Plow City*, 122 F. (2d) 816; *Michigan Alkali Co. v. Bankers Indemnity Ins. Co.*, 103 F. (2d) 345; *The Seatrain-Havana*, 103 F. (2d) 772. See, also, annotations in 1 A.L.R. 1528. The New York courts are now following the Luckenbach case. See *Battaglia v. Horn*, 3 N.Y.S. (2d) 961; *Buffalo Foundry & Machine Co. v. S. M. Frank & Co.* 14 N.Y.S. (2d) 327. Counsel say that none of these cases is in point because "they all involve loans between an insured and his own insurance company and not 'loans' between a joint tort-feasor and a third party." We think this case was one of a loan from

the insurer. The evidence shows that the storage company sent the $100 to the adjuster of the insurance company, who in turn gave it to the Andersons, and while the loan receipt given to the storage company acknowledges the receipt of $100, the money was paid to the Andersons by the insurance company.

2. Having determined that the "loan receipt" was not a release, all of counsels' argument relating to section 5, chapter 92, '35 C.S.A., and *Ducey v. Patterson*, 37 Colo. 216, 86 Pac. 109, relating to contribution or release, have no application.

Judgment affirmed.

MR. JUSTICE JACKSON and MR. JUSTICE ALTER concur.