BOZELL & JACOBS, INC., A CORPORATION, APPELLANT, V. BLACKSTONE TERMINAL GARAGE, INC., A CORPORATION, APPELLEE.

75 N. W. 2d 366

Filed February 24, 1956.   No. 33844.

*Matthews, Kelley, Fitzgerald & Delehant* and *Martin A. Cannon,* for appellant.

*White, Lipp & Simon,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

In this action plaintiff sought a recovery of damages resulting to an automobile that had been placed with defendant. Issues were made and trial was had. At

the close of all the evidence, the cause was dismissed on motion of the defendant. Plaintiff appeals.

We reverse the judgment of the trial court and remand the cause for a new trial.

The plaintiff and the defendant are corporations.

Plaintiff alleged that on or before June 1, 1953, it had entered into an oral contract with the defendant for a valuable consideration whereby plaintiff agreed to surrender its automobile to the defendant; that defendant agreed to care for the car in its garage and to return it unused and undamaged to the plaintiff on demand; that on June 1, 1953, the automobile was delivered to the defendant pursuant to the contract; and that it was later returned severely damaged so as to have a salvage value only.

Defendant by answer denied generally and admitted that it had entered into a "transaction" with plaintiff; that it operated a parking garage; that plaintiff arranged for the parking and removal of the car during the hours the garage was open; and that plaintiff's car was left with it "for parking."

Defendant then pleaded in detail the investigation made and recommendations received before employing a night man in the garage, the instructions given to the employee, and the methods of its operations. Defendant then pleaded that this employee, after working hours and not within the scope of his employment and in violation of his instructions, entered the garage, took plaintiff's car, drove it to Lincoln, and was involved in an accident in which the automobile was injured. In conclusion, defendant pleaded that the damage was not the result of any act of negligence or lack of care on its part and that it had acted with reasonable care, but that the damage was the result of the unauthorized criminal act of the employee.

For reply plaintiff denied allegations of new matter in the answer. It alleged that the defendant's employee was untrustworthy and irresponsible; that defendant

knew or could have discovered that fact; and that the damage was proximately caused by the negligence of the defendant.

The evidence shows without dispute that during the day or evening of May 31, 1953, plaintiff left the car with the defendant in its garage; that at 1 a. m. the following morning the employee closed the garage and went away; that within an hour he returned to and entered the garage, using a key furnished to him by the defendant; and that he took the car and drove it away on a mission of his own. The accident resulted while it was so used by the employee.

Defendant by amended answer alleged that plaintiff had been paid in full the amount of its loss and that it was not the real party in interest. Preliminary to the determination of the substantive questions presented by this appeal, we determine that question.

On cross-examination of plaintiff, it was shown that the plaintiff received a new car of the same model, style, and type that it had before the accident, in exchange for the damaged car, without payment from plaintiff, and that the difference was adjusted by the insurance carrier. It was then developed on redirect examination that there was an agreement between the insurance carrier and the plaintiff that plaintiff would make claim to and prosecute any and all legal proceedings necessary to enforce the claim; and that plaintiff acknowledged receipt of money "as a loan, repayable only in the event and to the extent of recovery that the undersigned may make from any person causing or liable for the loss or damage to the property insured * * *." A similar contention was advanced in Shiman Bros. & Co. v. Nebraska National Hotel Co., 143 Neb. 404, 9 N. W. 2d 807. There the loan to the plaintiff was not the full amount of the loss. However, we there quoted from and relied upon Luckenbach v. McCahan Sugar Refining Co., 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170. In the Luckenbach v. McCahan Sugar Refining

Co. case, the amounts received from the insurance companies aggregated the loss.

In Shiman Bros. & Co. v. Nebraska National Hotel Co., *supra*, we held: "An arrangement between an insurer and an insured, whereby the former loaned to the latter the amount of a loss under the terms of a policy of insurance, to be repaid only if the insured made a recovery from a third person, is a lawful agreement and the loan thus made is not such a payment of insurance as to make the insurer the real party in interest."

In 46 C. J. S., Insurance, § 1209, p. 170, it is stated: "Where insurer has advanced to insured the amount of the insurance under an agreement reciting that the amount was received as a loan to be repaid only from such recovery as might be had from any other party, insured, and not insurer, is the real party in interest."

Here the plaintiff did not assign its cause of action. It retained it and entered into an agreement with its insurer as to the disposition of the proceeds arising from a recovery. It is apparent that a recovery by the plaintiff here would bar a recovery by the insurance carrier in an action against the defendant.

Consistent with these authorities we find no merit in defendant's contention.

Plaintiff, by its president, testified that it made the agreement with the defendant through Mr. Block, defendant's owner and general manager; that the agreed consideration was $20 a month; and that it was understood that the automobile would be returned to the plaintiff in substantially the same condition in which it was received.

Defendant's Mr. Block testified that he had an oral agreement with the plaintiff for the storage of the car; that it was agreed that plaintiff could drive the car into the garage; and that defendant would take care of it and whenever the garage was open, would return it to plaintiff in substantially the same condition in which he re-

ceived it. The above is substantially the evidence as to the contract.

When left with the defendant, the plaintiff's car was an expensive make that had been driven some 800 miles. When returned to plaintiff, it had only a salvage value left. Obviously, it was not returned in substantially the same condition in which it was received by the defendant.

Plaintiff here alleged the contract and its breach. Defendant denied the contract, admitted that the car was left with it for storage, and alleged due care on its part. Plaintiff by reply joined issue on the answer and in defense thereto alleged negligence. In brief, those were the issues pleaded and upon which evidence was offered.

Plaintiff here relies upon the contract and asserts that the issue is one of damages only. Defendant here asserts that because it alleged the exercise of due care on its part, because plaintiff joined issue on that defense, and because evidence as to that question was offered and received, that plaintiff is now shifting its position as to the issue pleaded and tried. We see no merit in that contention. We deem it sufficient to point out that defendant in its motion for dismissal gave as one of the grounds that plaintiff had failed to establish the allegations of its petition and reply.

It appears from the evidence that defendant's normal open-for-business hours were from 7 a. m. to 1 a. m. the next morning. That at all times one or more employees were on duty. The employee involved here normally worked from 4:30 p. m. to 1 a. m. He was furnished a key that gave him entry to the building and, in turn, gave him access to all cars therein.

The patrons of defendant, so far as this class of service is concerned, normally drove their cars into the runway in the garage, leaving them there with the ignition keys in the cars. An employee of defendant then backed the cars into assigned stalls, where they were left with the keys in the cars. The owners then at any-

time the garage was open drove their cars from the stalls into the runway and out of the garage. Substantially all of the cars so left with defendant were owned by residents of a nearby hotel and were expensive models. Plaintiff testified that its car was valued at $5,000 before the accident. After the accident its value was about $1,850. Defendant's evidence as to value before the accident indicated a much smaller amount.

The rule is stated in 8 C. J. S., Bailments, § 22, p. 255, as follows: "The rights, duties, and liabilities of the bailor and the bailee must be determined from the terms of the contract between the parties, whether express or implied. Where there is an express contract, the terms thereof control, since both the bailor and the bailee are entitled to impose on each other any terms they respectively may choose, increasing or diminishing their rights, and their express agreement will prevail against general principles of law applicable in the absence of such an agreement. * * * Thus, the bailee is liable for loss resulting from breach of his contract to keep the property in a particular manner or at a particular place, although circumstances compel him to store it in another place and he was not negligent in doing so, or to use it only for a particular purpose or to a specified extent, or in a particular manner, or to return it at a particular time, or to comply with other special stipulations in regard to the property, irrespective of the question as to whether or not he has been negligent." Also in 8 C. J. S., Bailments, § 26, p. 267, it is stated: "A bailee may enlarge his liability by special contract, provided the contract is not in violation of law or public policy." In 6 Am. Jur., Bailments, § 181, p. 299, the text states: "Subject to the general rules and principles heretofore considered which govern such agreements, a bailee may enlarge his legal responsibility for the subject of the bailment by contract, express or implied, even to the extent of making himself absolutely liable as insurer for the loss or destruction of goods

committed to his care; this is true even of gratuitous bailees, and the contract embracing such liability is controlling and must be enforced according to its terms, irrespective of the fact that a less onerous liability is imposed by law on bailees of the same class generally. For such an undertaking, the bailment itself or the compensation to be paid for it is a sufficient consideration."

Defendant relies on decisions and quotes the rule as stated in 6 Am. Jur., Bailments, § 242, p. 345, which states: "The rule appears well settled that unless made so by statute or express contract, an ordinary bailee, no matter to what class he belongs, is not an insurer of goods delivered into his keeping, although, as respects a few special kinds of bailees, such as common carriers and innkeepers, it seems that public policy makes them such." Defendant appears to overlook the "unless made so by statute or express contract" clause.

The two rules are not in conflict. They apply to different contractual situations. The distinctions run throughout the texts and the decided cases.

The Supreme Court of the United States has aptly stated the rules and the distinctions as follows: "It is elementary that, generally speaking, the hirer in a simple contract of bailment is not responsible for the failure to return the thing hired, when it has been lost or destroyed without his fault. Such is the universal principle. This rule was tersely stated by Mr. Justice Bradley in Clark v. United States, 95 U. S. 539, where it was said (p. 542):

" 'A bailee for hire is only responsible for ordinary diligence and liable for ordinary negligence in the care of the property bailed. This is not only the common law, but the general law on the subject. See Jones, Bailm. p. 88; Story, Bailm. secs. 398, 399; Domat, Lois Civiles, lib. 1, tit. 4, sec. 3, pars. 3, 4; 1 Bell, Com. pp. 481, 483, 7th ed.'

"But it is equally true that where by a contract of bailment the hirer has either expressly or by fair im-

plication assumed the absolute obligation to return, even although the thing hired has been lost or destroyed without his fault, the contract embracing such liability is controlling and must be enforced according to its terms. In Sturm v. Boker, (1893) 150 U. S. 312, both the elementary principles above stated were clearly expressed by the court, through Mr. Justice Jackson. It was said (p. 330):

" 'The complainant's common law responsibility as bailee exempted him from liability for loss of the consigned goods arising from inevitable accident. A bailee may, however, enlarge his legal responsibility by contract, express or fairly implied, and render himself liable for the loss or destruction of the goods committed to his care—the bailment or compensation to be received therefor being a sufficient consideration for such an undertaking.'

"This statement of the binding effect of contracts upon those who enter into them was, in substance, but a re-iteration of the principle clearly announced in Dermott v. Jones, (1865) 2 Wall. 1, where it was said:

" 'It is a well-settled rule of law that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law or the other party. Unforeseen difficulties, however great, will not excuse him.' " Sun Printing & Publishing Assn. v. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366.

In principle this case has been decided by us in Butler v. Greene, 49 Neb. 280, 68 N. W. 496. We there stated the rule as follows: "A special contract of bailment prevails in determining the liabilities of the parties, as against general principles of law applicable in the absence of express agreement." In that case there was a bailment of a watch and chain. The plaintiff alleged that they were lost through negligence of the bailee. The verdict was for the plaintiff. Defendant complained

that the instructions to the jury carried an implication that he, as bailee, was an insurer of the property. The evidence was that the bailee contracted to keep the watch and chain in a vault in the bank, that he did not do so, and that he left it within the reach of thieves.

There the court by two instructions told the jury that if defendant contracted to keep the watch and chain in the bank vault, he was bound by his agreement to do so but that if he did not do so and the watch was stolen by reason of want of care, the jury should find for the plaintiff. We there held: "If the defendant contracted to keep the watch in the vault of the bank, and if it was lost by reason of his failure to do so, he was liable without regard to the general principles of the law of bailment. He had made a contract and he was liable for all damages resulting from his failure to perform it. If he had no right to keep the watch in the vault, that was his affair and not the bailor's. The contract was not to keep the watch in the vault if the bank permitted it, but it was absolute; and it was the pledgee's business to see that he had authority to keep it there. If he had not, he should not have made the contract. But the instructions of the court relieved him from this liability, and, taken together, were to the effect that although he broke his contract in this regard he was still not liable unless he failed to exercise ordinary care. This was more favorable to the defendant than the law warranted."

So here the defendant contracted to return the plaintiff's car to it in substantially the same condition as when it was received. It was not conditioned on the exercise of due care, nor was it on an "if it is not stolen" condition. The promise as testified to by both parties was absolute. The exercise of ordinary care is not a defense under these conditions. The law does not warrant it.

The question here is not that of defendant's exercise of due care, or liability for the tortious acts of its serv-

ants. It is a question of defendant's liability for a breach of its admitted contract.

The defendant now seeks to impose upon the plaintiff an exception to its absolute liability which it did not directly or by implication impose when the contract was made. The defendant's liability here rests on its failure to do that which it agreed to do.

At the close of the evidence the contract to return the car in substantially the same condition as when it was received was established without dispute. The breach of that agreement was either admitted or not disputed. There remained nothing to submit to the jury except the amount of plaintiff's damage. It necessarily follows that the trial court erred in dismissing the cause.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.