WILLIAM P. TOBER ET AL., APPELLANTS, v. WAYNE HAMPTON ET AL., APPELLEES.

136 N. W. 2d 194

Filed July 2, 1965. No. 35906.

Sidner, Lee, Gunderson & Svoboda and McGinley, Lane, Mueller & Shanahan, for appellants.

Arthur R. Johnson and Baskins & Baskins, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

Plaintiffs William P. Tober and Louise Tober, husband and wife, brought this action in the district court for Keith County, Nebraska, against the defendants, Wayne Hampton and H. D. Rowley, doing business as Hampton & Rowley, to recover damages to real and personal property caused by a gas explosion which occurred November 22, 1960, in a house at 104 East H Street, in Ogallala, Nebraska. The petition alleges defendants' employees, while operating a ditch digging machine in constructing a sewer line, negligently allowed it to come into forcible contact with a gas line at the front of the premises, damaging it and causing a leak. It further alleged defendants failed to inspect the line thereafter to determine the amount of damage and covered the ditch without making repairs or reporting what had happened to the proper authorities.

The amended petition consisted of two causes of action, the first being for damages to plaintiffs as owners of the premises, and the second consisting of a claim for damages to personalty of the resident tenants, H. L. Robinette and Sunya Robinette, which had been assigned to plaintiffs.

Following a pretrial conference held March 4, 1964, the trial court made an order which set forth the issues as follows: "1. The ownership of the claims involved in the action. 2. Negligence of the defendants, if any. 3. Contributory negligence, if any. 4. The proximate cause, including the theory by the defendants that the conduct on the part of the gas company was the sole cause. 5. Damages. A. The amount thereof. B. The effect of contracts with the gas company. C. Rental losses." The order further stated: "In view of the fact that it appears to the Court that there is a dispute over the effect of the loan agreements between the plaintiff, his assignees and the gas company, involving consideration of certain agreements, depositions and other evidence, IT IS THEREFORE ORDERED that the matter be submitted to the Court without a jury, for an advance decision upon the construction and effect of said agreements upon the issue of the owner to the claim of damages. * * * Trial is set for April 2, 1964, at 10:00 o'clock, A.M., for the disposition of the non-jury issues." The order stated its provisions should constitute part of the record and would be final unless excepted to by either party within 10 days from March 17, 1964. No exceptions were filed.

On April 2, 1964, the matter came for trial to the court without a jury as ordered. Evidence was taken and the cause argued and submitted. On May 14, 1964, the court decided the matter, finding generally for the defendants and specially: "* * * that the alleged Loan Agreements were in the truth and in fact a settlement by the plaintiffs of their claim and the assigned claim of the Robinettes with the Natural Gas Distributing Company; that

said Loan Agreements were in truth and in fact, in addition to being a settlement, an assignment of the rights of the plaintiffs on their own claim and the claim of the Robinette's to the Natural Gas Distributing Company; that the settlement and assignment of the plaintiffs and the Robinette's as drawn and drafted were placed in the form of a Loan Agreement for the sole purpose of enabling the Natural Gas Distributing Company to avoid its liability to the plaintiffs and Robinette's in whole or in part and to impose full liability for said damages upon the defendants for the benefit of the Natural Gas Distributing Company and the plaintiffs. That said alleged Loan Agreement is a full and complete assignment of all claims of the plaintiffs to the Natural Gas Distributing Company and that the plaintiffs are not the owners of said claims." The plaintiffs' cause of action was thereupon dismissed.

Plaintiffs' motion for a new trial having been overruled, the case is brought to this court by appeal.

Plaintiffs first contend the trial court erred in ordering a hearing and receiving evidence on issues not set forth in the pleadings. They contend that defendants' answer failed to allege plaintiffs were not the real party in interest or that the plaintiffs and their assignees had settled their actions. This requires us to consider the effect of the pretrial order which set forth those particular issues for determination. It is governed by the rule set out in the 1963 Revised Rules of the Supreme Court at page 35. It provides in part as follows:

"(a) In any civil action in the district court after issues have been joined the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider

"(1) The simplification of issues;

"(2) The necessity or desirability of amendments to the pleadings; * * *

"(5) The advisability of a preliminary reference of

issues to a master for findings to be used as evidence when the trial is to be by jury;

"(6) Such other matters as may aid in the disposition of the action.

"The court shall at the time of the pre-trial hearing make a record of the proceedings which recites the action taken at the conference, the amendments allowed to the pleadings, and the amendments made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreement of counsel; that counsel shall forthwith acknowledge their assent thereto, or, in the alternative, state into the record any and all objections they may have thereto; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

In Long v. Magnolia Petroleum Co., 166 Neb. 410, 89 N. W. 2d 245, this court held: "The purpose of a pretrial conference is to simplify the issues; amend the pleadings, when necessary; and avoid unnecessary proof of facts at the trial. * * * The participants in a pretrial conference must adhere to the spirit of that procedure and are held to have waived questions not there presented. * * * Modification of a pretrial order may be had at the trial to prevent manifest injustice, but the modification should be by direction and not by indirection. * * * The subsequent course of an action is controlled by the agreements made at pretrial conference so long as they remain unmodified and that would be true on appeal."

It appears in the cited case the issues were narrowed by the pretrial conference. It is the apparent contention of the plaintiffs that only issues that are within the ambit of the pleadings may be formulated and adopted at the pretrial conference. The pretrial rule of this court hitherto set out is substantially the same as rule 16 governing procedure in the federal district courts. This rule is discussed at length in 3 Moore's Federal

Practice (2d Ed.), pages 1101 to 1125. On page 1118, section 16.12, it is considered with respect to its relation to the pleadings in the case as follows: "Where there has been a pre-trial conference, there are not likely to be requests for permission to amend at the trial; and permission to amend at the trial should ordinarily not be granted when such amendment will result in a delay of the trial, except when relevant matters have arisen after the pre-trial conference, or when matters existing at the time of that hearing were not discovered until afterwards and the attorney was not negligent in failing to obtain the information earlier. Since the pretrial order controls the future course of the action, however, failure to amend the pleadings to reflect the issues stated in the order should be immaterial." See, also, McComb v. C. A. Swanson & Sons, 77 F. Supp. 716; Low v. Davidson Mfg. Co., 113 F. 2d 364; American Surety Co. of New York v. Williford, 243 F. 2d 494. If at a pretrial conference it appears there are issues which might be determinative of the cause although not then within the pleadings, they should be stated in the pretrial order which should thereafter govern the proceeding in that respect. The interpretation placed on rule 16 by the federal courts is applicable to that adopted by this court. In the pre-trial order before us the issues involved and later considered were plainly stated. No exceptions were taken by the parties. The contention of the plaintiffs cannot be sustained.

Plaintiffs further assign error to the trial court in dismissing the plaintiffs' petition which action is asserted to be contrary to the law and the evidence. These contentions will be considered together. At the trial the so-called loan agreements were introduced by the plaintiffs. That signed by both plaintiffs involved in the first cause of action is as follows:

"LOAN AGREEMENT

"Received from Natural Gas Distributing Company the sum of $3,500.00 as a loan repayable only

out of any net recovery that the undersigned may make from Hampton Construction Company or any persons or corporations upon or by reason of any claim for loss of or damage to the property described below or from any insurance effected by said Hampton Construction Company or others which might be obligated or used in the payment of such loss. We hereby pledge any recovery to Natural Gas Distributing Company on such claims that we may now have against the above mentioned parties or any of them and any recovery thereon or therefrom. * * * We hereby guarantee that we are the persons entitled to enforce the claim against said Hampton Construction Company or any other persons or corporations responsible for the loss or damage to the hereinafter described premises, and we hereby appoint the officers of Natural Gas Distributing Company and their successors, severally, our agents and attorneys in fact with irrevocable power to collect such claim and to begin, prosecute, compromise or withdraw in our name, but at the expense of said Natural Gas Distributing Company any and all legal proceedings which they may deem necessary to enforce such claim or claims and to execute in our name any documents which may be necessary to carry into effect the purposes of this agreement. We further specifically agree to cooperate in the prosecution of the claim above mentioned and render all assistance incidental thereto. * * * The description of the property herein referred to and the damage to and loss of which is the basis of the claim above described is as follows: * * * (Legal description of the premises here set out.) The accident referred to occurred on or about November 22, 1960, at the above described premises when an explosion occurred causing some damage to the house and personal property contained therein which said house and personal property were lo-

cated on the aforedescribed real estate. * * * Dated this 1st day of June, 1961."

A similar loan agreement, except for the amount which was $400, was executed by both Robinettes on May 31, 1961. It was shown the recited sums were paid by the Natural Gas Distributing Company, hereinafter at times referred to as the Gas Company.

On June 3rd thereafter the Robinettes executed an assignment to the Tobers for the recited consideration of $1. The testimony shows the assignment was given solely for convenience in bringing suit and no consideration passed. The present action was thereafter filed July 26, 1961.

The testimony showed that the explosion took place November 22, 1960. The damages to the plaintiffs' house and to the Robinettes' personal property therein were caused by the same explosion. From the evidence it appears the defendants dug a sewer on the north of the house in question on October 29, 1960. While digging, the bucket machine struck the gas line although with what force and effect is not shown. They laid the sewer and closed the trench the same day. The evidence shows that the Gas Company was notified several times of the odor of gas in the house, the first occasion being October 31, 1960. Employees, including the foreman of the service crew, had been to the premises to answer calls on several occasions. Two were at the home the day of the explosion. One had made two trips that day. The two were on the premises between 3 and 3:30 p.m., before the explosion which occurred about 5 o'clock. Some of the employees had tested several appliances and found leaks. The heating stove was leaking gas quite badly and was replaced but the odor continued. No tests, however, were made outside the house or along the gas mains or lines.

After the explosion the plaintiffs and Robinettes employed Murl M. Maupin, an attorney at North Platte, to represent them. He testified he took the matter up with

representatives of the Gas Company and they worked out a disposition of the matter. He authorized his clients to sign the loan agreements heretofore mentioned and the money was loaned, or paid, to them. He appears to have been away when the papers were signed. After the signing and delivery of the checks, Maupin was paid by the plaintiffs and the Robinettes and appeared no further in the matter. This action was thereafter brought for the plaintiffs by the attorneys who had represented the Gas Company.

The plaintiffs in their brief state the questions involved in this action are between two independent tort-feasors. From the contentions throughout the brief it may be said that they admit that in respect to the plaintiffs herein the Gas Company and the defendants were tort-feasors. The duties of the Gas Company to the general public to operate its business and maintain its pipes so as to prevent the escape of gas therefrom are set out in Clough v. North Central Gas Co., 150 Neb. 418, 34 N. W. 2d 862.

In this state, the rule is: "Where the independent tortious acts of two persons combine to produce an injury indivisible in its nature, either tortfeasor may be held for the entire damage, not because he is responsible for the act of the other, but because his own act is regarded in law as a cause of the injury." Barry v. Moore, 172 Neb. 57, 108 N. W. 401.

The opinion of this court in Fitzgerald v. Union Stock Yards Co., 89 Neb. 393, 131 N. W. 612, 33 L. R. A. N. S. 983, throws considerable light on the questions before us. In that case an employee of the Chicago, Burlington and Quincy Railroad worked in the yard at South Omaha as a switchman. While engaged in adjusting a chain used in fastening the tender to the locomotive, made necessary because of a defective coupling, the Union Stock Yards drove a train of cars against that on which he was working, forcing the car and locomotive together and killing him instantly. The administratrix

of his estate had received $4,400 from the railroad company and signed a release reciting it was in full settlement for all damages arising from death caused by the railroad. Subsequently the action was brought against the Union Stock Yards. This court in its syllabus stated: "Several actions may be brought and several judgments recovered against several wrongdoers, although but one satisfaction can be had. * * * If one of several joint wrongdoers makes full payment of damages caused by injury done, there can be no further recovery for the same injury. * * * If one of several joint wrongdoers makes settlement with the injured party and pays him damages which he agrees to receive and does receive as full compensation for all damages sustained, it will release all of the joint wrongdoers. * * * If the settlement is in writing, oral evidence is competent to show the intention of the parties thereto in an action against one not a party to the settlement; * * *." The opinion states it cannot affect third persons who, if it were otherwise, might be prejudiced by things recited in the writing, contrary to the truth through the ignorance, carelessness, or fraud of the parties, and who therefore ought not to be precluded from proving the truth however contradictory to the written statements of others. In the body of the opinion the court held further that in any event the injured party can have only one satisfaction for the injury and if the amount received was not in full satisfaction it was a pro tanto bar to an action against the other wrongdoer. In so doing the court followed the rule adhered to by many courts. This is shown by the note at 104 A. L. R. 931, at page 932 thereof. It is based on the fact that one injured by tort can have only one full satisfaction. 52 Am. Jur., Torts, § 117, p. 455. The rule of pro tanto reduction as applied in the Fitzgerald case has been thereafter followed in Hauth v. Sambo, 100 Neb. 160, 158 N. W. 1036; Tankersley v. Lincoln Traction Co., 101 Neb. 578, 163 N. W. 850; Menking v. Larson, 112 Neb. 479, 199 N. W. 823; and it has become

the law in many jurisdictions. Annotation, 80 A. L. R. 477.

In the case before us the loan receipts were given by the plaintiffs and Robinettes as hereinbefore set forth. Loan receipts are quite common between insurer and insured. Their use stems from the early case of Luckenbach v. W. J. McCahan Sugar Ref. Co., 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522. A history of the early cases is contained in a note to that case in 1 A. L. R. 1528. Since then their use has been greatly extended by insurance carriers but rarely have they been used between joint tort-feasors. A later discussion of loan receipts is set out in the annotation at 157 A. L. R. 1261. As between an insurer and an insured, they have generally been held to be valid. In Bozell & Jacobs, Inc. v. Blackstone Terminal Garage, Inc., 162 Neb. 47, 75 N. W. 2d 366, it is stated: "An arrangement between an insurer and an insured, whereby the former loaned to the latter the amount of a loss under the terms of a policy of insurance, to be repaid only if the insured made a recovery from a third person, is a lawful agreement and the loan thus made is not such a payment of insurance as to make the insurer the real party in interest." The same rule was applied in Shiman Bros. & Co. v. Nebraska National Hotel Co., 143 Neb. 404, 9 N. W. 2d 807, and in Sun Ins. Co. v. Aetna Ins. Co., 169 Neb. 94, 98 N. W. 2d 692. These were all insurance cases involving a contractual relationship where by the policy or by law the insurance company was subrogated to the extent of payment.

The plaintiffs' apparent contention is that where they received the payment from a tort-feasor under a loan agreement, that loan is valid, and that they are entitled to pursue their action against the other tort-feasor and collect the full amount of their damages. Under the loan agreement it is apparent that if the plaintiffs prevail in their recovery and if the agreement is followed, the Gas Company will be indemnified thereunder. De-

fendants contend neither indemnification nor contribution is allowed between tort-feasors in Nebraska.

We are cited to no decisions of this court permitting indemnification. In the early case of Union Stock Yards Co. v. Chicago, B. & Q. R.R. Co., 196 U. S. 217, 25 S. Ct. 226, 49 L. Ed. 453, the Supreme Court of the United States, in a case originating from Nebraska on inquiry by a certificate from the United States Circuit Court of Appeals for the Eighth Circuit, held that a terminal company whose negligence toward one of its employees in failing, by a proper inspection, to discover a defective brake on a car delivered to it by a railroad company has been established by a competent tribunal, cannot enforce contribution or recover indemnity from the railroad company because of the latter's like neglect of duty. In the discussion contained in the opinion, cases are cited in which other courts have permitted indemnification between tort-feasors under certain conditions. These decisions were not necessary for the determination of that case and are not necessary for consideration by this court in the present case.

The cases from courts of other states which have allowed indemnification between tort-feasors have not generally allowed it in a case such as is now before us.

In Winn-Dixie Stores, Inc. v. Fellows (Fla.), 153 So. 2d 45, the court, in discussing the rights of the parties, stated: "On the basis of the foregoing proof coming from the mouths of Winn-Dixie's own employees, none of which was contradicted by other evidence, the jury could have reached no other lawful conclusion but that Winn-Dixie had actual knowledge of the dangerous manner in which the Pepsi-Cola display had been constructed for a sufficient period of time prior to the accident to have taken such steps as were necessary to correct the condition and protect the safety of its customers. Because of Winn-Dixie's failure to use due care in the premises its negligence in the transaction was not secondary or passive, but constituted primary and active negligence

of the same degree for which Pepsi-Cola was guilty. There being no conflict in the evidence on this point, no jury issue on the question was created, and Winn-Dixie was not entitled as a matter of law to recover over from Pepsi-Cola as indemnity any loss it may suffer as a result of such judgment as may be rendered against it in favor of plaintiffs."

In the case of Bolton v. Ziegler, 111 F. Supp. 516, there was a loan receipt given to the injured party by one tort-feasor with an agreement to be repaid only out of the recovery from the other. It was accompanied by a covenant not to sue the tort-feasor that had advanced the payment. In that case the injured party brought action and the questions both of indemnity and contribution were discussed. The Iowa law was there interpreted by the United States district court and it was there held: "* * * the word 'indemnity' as used in connection with law relating to tort-feasors means a shifting of the entire loss, while the word 'contribution' means a sharing of the loss. * * * The common law rule against contribution between joint tort-feasors prevails in Iowa, but one tort-feasor may secure indemnity from another tort-feasor in a proper case, unless the party claiming indemnity owed a duty to the injured party equal to that owed by party from whom indemnity is sought. * * * operator of automobile and operator and owner of truck with both of which vehicles automobile of plaintiffs collided owed plaintiffs duty of observing law of Iowa governing operation of motor vehicles upon highways, and such equality of duty would preclude operators and owners of truck from obtaining indemnity from operator of automobile with which plaintiffs' automobile collided."

The case of United Gas Corp. v. Guillory, 206 F. 2d 49, involved a gas explosion also. Litigation ensued between those claiming it was caused from prior leakage attributable to the fault of the gas company and those asserting it arose from the negligent operations of the in-

tervener Gulf States Utilities Company through its employees in building a manhole. The federal court held: "Under Louisiana law, indemnity is restricted to cases where actual fault is attributed to one party and other party is only technically or constructively at fault, and indemnity is never applicable where both parties are actually in the wrong." We think most courts which permit indemnity between tort-feasors follow this rule. It appears from the record that the Gas Company was more than technically or constructively at fault and would not be allowed indemnity in those states which permit it, and it should not be permitted here. See, also, Standard Brands, Inc. v. Bateman, 184 F. 2d 1002, interpreting the law of Missouri.

The decisions of this court do not present a definite and unquestionable rule with respect to the right of contribution as applied between negligent tort-feasors. In Johnson v. Torpy, 35 Neb. 604, 53 N. W. 575, 37 Am. S. R. 447, this court reversed and remanded for trial a judgment of the district court which had allowed contribution against defendant saloonkeeper in favor of another who had paid a judgment recovered by the widow of a deceased habitual drunkard. In the opinion the court stated: "In determining whether the right of contribution exists in favor of one wrong-doer against another the test is, must the party demanding contribution be presumed to have known that the act for which he has been compelled to respond was wrongful? If not, he may recover against one equally culpable, but otherwise he is without remedy." In the second trial of the case the district court directed a verdict and entered judgment for the defendant thereon. This judgment was affirmed by this court in Torpy v. Johnson, 43 Neb. 882, 62 N. W. 253, holding it conclusively appeared from the evidence that the plaintiff saloonkeeper knew the wrongful character of his sales and would not be permitted contribution. The opinion, however, adhered to the rule previously stated.

Thereafter in First Nat. Bank of Pawnee City v. Avery Planter Co., 69 Neb. 329, 95 N. W. 622, 111 Am. S. R. 541, contribution was allowed to one of three creditors against the other two who joined with it in an unsuccessful support of separate attachment suits as against a chattel mortgage given by the debtor to secure all its creditors. The court in the opinion stated: "When such judgment is satisfied by one of the parties, contribution will be enforced, where it appears that the parties acted in good faith and without any intention of committing a trespass." The basis of contribution therein was held to be the ratio the claims of the attaching creditors bore to each other. Thereafter in Schappel v. First Nat. Bank, 80 Neb. 708, 115 N. W. 317, this same matter was returned to this court for consideration of additional and supplemental litigation. In the affirmance of the subsequent decision of the trial court, the same result was reached but the opinion does contain a discussion which casts same doubt as to whether the court would have, at least wholeheartedly, adhered to its former decision if it were not the law of the case.

The previously cited cases of this court with respect to contribution between negligent tort-feasors have been given only a cursory review here. For an extended and painstaking résumé of the cases mentioned and others decided by this court, reference may be had to the opinion of Judge Delehant in Andromidas v. Theisen Bros., 94 F. Supp. 150. In that case the federal court concluded that this court would thereafter in such cases apply the general rule stated in 18 C. J. S., Contribution, § 11, p. 14: "Apart from statute, the general rule * * * is that one of several wrongdoers, who has been compelled to pay the damages for the wrong committed, cannot compel contribution from the others who participated in the commission of the wrong. This is a rule not only of the common, but of the civil, law, and it obtains in equity as well as at law." The rule agrees in substance with that set forth in Restatement, Restitution, § 102, p. 429.

We think the rule is sound and is amply sustained by the reasons therefor set out immediately following it in 18 C. J. S., Contribution, § 11, p. 14. It is adopted by this court and insofar as the cases of First Nat. Bank of Pawnee City v. Avery Planter Co., *supra,* and Schappel v. First Nat. Bank, *supra,* conflict therewith, they are overruled.

The question of considerable import is presented in this case because of the ruling of this court in Fitzgerald v. Union Stock Yards Co., *supra,* requiring a pro tanto reduction of the amount previously received from a tort-feasor in the subsequent suit brought against another tort-feasor as the rule is applied to the case before us where loan receipts were given. The only case we have found discussing this situation is the case of Bolton v. Ziegler, *supra.* In that case there were a loan receipt given the one tort-feasor, Denver-Chicago Trucking Co., and a covenant by the injured party, Bolton, not to sue that company with whom the loan agreement was executed. In the suit against the other tort-feasor, Ziegler, the question of the application of the rule of pro tanto reduction was reviewed by the court as applied to that situation. In the opinion the court stated: "The plaintiffs also argue that if the covenants not to sue stood alone, and no applications were made, they would be receiving double satisfaction, but since under the loan receipt agreements the sums received under the covenants not to sue are repayable to the Denver-Chicago Trucking Company or its liability insurer, they will only receive the amount of damages to which they are entitled. * * *

"There is no claim made by the plaintiffs that they are not bound by the covenants not to sue. They make no claim that the Denver-Chicago Trucking Corporation or its liability insurer has elected to waive their rights under the covenants not to sue and stand only upon the loan receipt agreements. If the loan receipt agreements stood alone and were, under the circumstances of the

present case, valid as against the defendant, Ziegler, then the sums referred to would not have to be applied by the plaintiffs upon their recoveries. If the covenants not to sue stood alone, the sums referred to would undoubtedly have to be applied upon such recoveries. In legal effect, the two agreements are repugnant one to the other. The question would seem to be, which of the two repugnant provisions is to prevail? The Iowa Supreme Court has not passed upon the question. The question has not been discussed in any of the cases cited nor in any of the literature on loan receipts referred to. The basis of the Iowa rule of pro tanto reduction is the prevention of unjust recoveries. There is no reason for assuming that the Iowa Supreme Court is concerned only with the prevention of unjust recoveries by claimants and has no concern as to unjust recoveries by joint tort-feasors. As heretofore noted, the recovery of indemnity or contribution, from the defendant Ziegler, under the situation in the present cases would constitute an unjust recovery in light of the Iowa law. It is believed that the doctrine of pro tanto reduction is also applicable to prevent unjust recoveries of indemnity or contribution by joint tort-feasors. In a note in 95 University of Pennsylvania Law Review 231 (1946), discussing the device of a loan receipt, at page 234 the following statement appears: '* * * But the use of a legal device, proper in its setting, should not be extended to a situation foreign to its nature for the purpose of thwarting the decisions of the courts.'

"It is the view of this Court that it would thwart Iowa law and Iowa policy to permit the loan receipt agreements in question to have the effect of preventing the application of the sums of $9,000 and $3,000 upon the recoveries of the plaintiffs against the defendant Ziegler, and that the documents in question should, as to the defendant Ziegler, have the status of covenants not to sue. * * * However, as noted, many courts have held their use to be proper in certain settings. In the present

cases the loan receipt agreements are being used in an attempt to thwart the law of Iowa relating to contribution among joint tort-feasors. The holding of the Court herein is limited to the holding that such use is not proper. It is not a holding as to the validity of loan receipt agreements in other situations, either under the law generally or under the law of Iowa." See, also, Trampe v. Wisconsin Telephone Co., 214 Wis. 210, 252 N. W. 675.

In the case before us there was no covenant not to sue as in the cited case of Bolton v. Ziegler, *supra,* there being only the loan receipts. The Gas Company is not a party to the suit and it was not asked to be made a party. Here, also, the plaintiffs make no claim that the Gas Company has elected to waive its right under the agreement and to be reimbursed thereunder. If the action would proceed to judgment and recovery herein, the effect would be to indemnify the Gas Company in the same manner as was sought in Bolton v. Zeigler, *supra.* As used in the present case, the loan receipts are being used to thwart the law of Nebraska relating to indemnification and contribution among tort-feasors.

Even in insurance cases where the matters were considered in regard to the real party in interest courts have looked through the form of these receipts and found them to be payments. In Yezek v. Delaware, L. & W. R.R. Co., 176 Misc. 553, 28 N. Y. S. 2d 35, the court said: "Every action must be prosecuted in the name of the real party in interest. (Civ. Prac. Act, § 210.) One of the real parties in interest here is the Universal Insurance Company. It is entitled to receive $245 of any recovery. It was absolutely, not contingently, liable to the plaintiff therefor. It paid him. It required repayment only if he recovered from the railroad company. It provided for no interest. It took no security. It controls the action to recover. On paying the plaintiff, it is entitled to a receipt and release. It elected to take a loan agreement. However, it was 'payment without

regard to its form.' The so-called loan was a fiction, a subterfuge unnecessary either to protect the insurer or to secure prompt payment to the insured." The quotation was approved in the Alabama Supreme Court in McKenzie v. North River Ins. Co., 257 Ala. 265, 58 So. 2d 581. See, also, Scarborough v. Bartholomew, 22 N. Y. S. 2d 635, affirmed in 263 App. Div. 765, 30 N. Y. S. 2d 971. The questions presented here require us likewise to consider the purpose and effect of the loan agreements without regard to their form.

In the case before us the plaintiff William P. Tober testified with respect to the claim in the first cause of action that he made a settlement with the Gas Company although he stated it did not pay him anything because he got a loan from it although he received $3,500. He signed some papers but said he did not know what they were. He had a copy of a contract, or something of the kind, but he did not have it with him and did not know if he could find it. He had not asked the Gas Company for the loan; his lawyer handled it but he did not know what the lawyer did. He paid his attorney for making the settlement. Judgment on the first cause of action was asked in the sum of $6,540.31. If the plaintiffs receive all they ask and pro tanto reduction is made, there would only be left $3,040.31 to be applied on the note to the Gas Company. This would be insufficient to pay it. If the loan agreement here was held valid and to be only a loan and followed literally, and the plaintiffs were allowed to recover in full herein and on repayment of the loan to bring action against the Gas Company in the absence of a covenant not to sue it, the recovery herein would bar further recovery as effectually in such a proceeding. It is difficult to see how there remains any real interest that the plaintiffs have in this cause of action. The plaintiffs' attorney who made the settlement stated that he had effected a "disposition" with the Gas Company's attorneys and was then paid his fee.

With respect to the second cause of action, Mrs. Robinette, called by the defendant, testified that they received two checks, "one for $200.00 for the children showing that there was no harm done to them and to release all claim, that they weren't hurt in any way; and then a $400.00 check for our damages that we received in the explosion." She said they signed no notes but did sign some papers that day "they gave us the check." Mr. Maupin represented them and they paid him for his services. She testified she understood that they were settling their end of it in full and she never expected to get any more from it. On cross-examination she said she had read the agreement and knew its terms but did not understand it was a loan, but she did understand they would have a right to proceed against Hampton & Rowley Construction Company. On redirect examination she reiterated that she did not know it was a loan and never expected to receive anything further. This procedure went through recross, re-redirect, and re-recross-examination. She did at times state it was explained that she might get something more although she reiterated that she never expected anything. The suit on the second cause of action was for $1,114.08. If reduced pro tanto by the $400 paid and the loan were repaid to the Gas Company, there would be some recovery to the Robinettes. A list of personal property was attached to the petition showing a complete loss of goods in the amount of $505.60, but from its arrangement it would appear that the original cost is sought to be recovered. Another list sets out goods apparently valued at $347.50, and opposite the price is $29.25 for drycleaning. Goods marked washable followed in the amount of $260.98. To arrive at the sum claimed, it is necessary to take the value of the drycleaned goods and not the drycleaning bill and to take the total value of the washable goods. There are no allegations to explain which is to be taken as the damages suffered or the reasonable value of any of the property listed. Moreover,

in view of the testimony which indicates the children were not harmed, the payment of $200 for them is significant.

Applicable to both causes of action are the loan agreements themselves which were arranged by the lawyer of those injured and the Gas Company. Quite decisive of the question involved are its provisions giving the officers of the Gas Company and their successors irrevocable power to collect the claims, or to bring, prosecute, compromise, or withdraw all legal proceedings in the name of the injured party but at the expense of the Gas Company. It is apparent considering the agreements and the surrounding circumstances the whole proceedings are in the hands of the Gas Company and the arrangements were made for its benefit alone.

Whether plaintiff is the real party in interest ordinarily is a question of law for the court. 67 C. J. S., Parties, § 116, p. 1118. The trial court held that the alleged loan agreements were in truth and in fact an assignment of the rights of the plaintiffs on their own claim and the claim of the Robinettes to the Natural Gas Distributing Company; that the settlement and assignment of the plaintiffs and Robinettes as drawn and drafted were planned in the form of a loan agreement for the sole purpose of enabling the Natural Gas Distributing Company to avoid its liability to the plaintiffs or the Robinettes in whole or in part and to impose full liability for said damages on the defendants for the benefit of the Natural Gas Distributing Company; and that the plaintiffs were not the owners of said claims. It in effect held that they were not the real parties in interest and had no right to bring the suit. Under the circumstances in this case, was this ruling of the court wrong? We think not.

It follows that the judgment of the trial court should be and is affirmed.

AFFIRMED.

BOSLAUGH, J., concurring.

I concur in the result which the court has reached in this case, but I respectfully submit that the decision should be based upon a different ground.

The trial court found that the alleged loan agreements were in truth and in fact a settlement by the plaintiffs of their claim and the assigned claim of the Robinettes with the Natural Gas Distributing Company. The evidence sustains this finding and is sufficient to sustain a further finding that the settlement was received by the plaintiffs as full compensation for all damages sustained. Such a settlement effects a release of the defendants from any liability to the plaintiffs in this action. Fitzgerald v. Union Stock Yards Co., 89 Neb. 393, 131 N. W. 612, 33 L. R. A. N. S. 983. It would seem to me that this is the proper ground upon which to base the dismissal of the action.

If the Natural Gas Distributing Company has no right to contribution or indemnity from the defendants in this action, then the assignment of the plaintiffs' rights to the Natural Gas Distributing Company was ineffective and the plaintiffs remain as the real parties in interest. If their cause of action against the defendants has not been satisfied by the settlement which the plaintiffs made with the Natural Gas Distributing Company, the action should be allowed to proceed. In the event of a recovery by the plaintiffs in this action, the defendants would be entitled to the benefit of the partial satisfaction which the plaintiffs have received from the Natural Gas Distributing Company.

SMITH, J., dissenting.

Plaintiffs are the real parties in interest. The ordinary loan receipt will not change the status of a borrower in this respect. See Bozell & Jacobs, Inc. v. Blackstone Terminal Garage, Inc., 162 Neb. 47, 75 N. W. 2d 366. The rule reaches a transaction in which the lender is a putative tort-feasor or his insurer. See, Klukas v. Yount, 121 Ind. App. 160, 98 N. E. 2d 227; Crocker

v. New England Power Co. (Mass.), 202 N. E. 2d 793.

The majority opinion warrants a look through the form to the substance of the documents in reliance on Yezek v. Delaware L. & W. R.R. Co., 176 Misc. 553, 28 N. Y. S. 2d 35. There a loan receipt given by one insured under an automobile collision policy was said to have been a receipt for payment; therefore, the court held that the insured was not the sole party in interest. We held otherwise in the Bozell case.

The instruments under review have not discharged defendants from liability. See, Western Spring Service Co. v. Andrew, 229 F. 2d 413; Wilson v. Anderson, 113 Colo. 396, 157 P. 2d 690; Crocker v. New England Power Co., *supra.* In any event, with the preliminary issue limited to ownership of the claim we have no passport to the issue of discharge.

It is unnecessary to discuss other rights and obligations of plaintiffs, the Robinettes, and the gas company inter se. It is unnecessary to consider questions of indemnity, contribution, or pro tanto reduction in damages. The hypothesis that the loans are greater than any possible judgment does not militate against my conclusions. See Bozell & Jacobs, Inc. v. Blackstone Terminal Garage, Inc., *supra.*

For these reasons I vote to reverse and remand.